UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-CV-81550-ROSENBERG

DURO BEAM, LLC

      Plaintiff,

v.

WILLIAM E. MANNING, WEM GLOBAL,
INC., JEFFREY HOOGENDAM, 360CONNECT,
LLC, IAN HART, IAN HART DESIGN, LLC and
CMI MARKETING, INC.

      Defendants.
_____/

**MOTION TO DISMISS COMPLAINT BY
<u>360CONNECT, LLC AND JEFFREY HOOGENDAM</u>**

      Defendants, 360Connect, LLC and Mr. Jeffrey Hoogendam, respectfully move this Court, pursuant to Fed. R. of Civ. P. 12(b)(2) and (6), to dismiss the Complaint, DE 7. The Complaint is an impermissible shotgun pleading that impermissibly includes a dilution and duplicative unfair competition claim. There are also no allegations of trademark use or wrongdoing by 360Connect or its principal, Mr. Hoogendam, who is not subject to personal jurisdiction in Florida under the corporate shield doctrine. These Defendants should therefore be dismissed. Defendants attach as the **Exhibit** to this Motion the Declaration of Mr. Hoogendam and further state:

**I.   BACKGROUND**

      This is a purported trademark infringement case. Plaintiff claims to supply steel building kits for garages, warehouses, commercial spaces, and agricultural buildings. DE 7 at ¶ 19. Plaintiff alleges that its "Duro Beam" mark appeared without its authorization on "various websites." DE 7 at ¶ 2.

Specifically, Co-Defendants William E. Manning and his company, WEM Global, Inc., are alleged to "own and operate the website www.metal-buildings.org" (the "Manning Website"). *Id.*, ¶ 25. Co-defendants allegedly posted an article on the Manning Website titled "Duro Steel Building Review," which "made multiple references" to Plaintiff's "Duro" marks. *Id.*, ¶ 26.

The Manning Website "included a lead generation section where … readers could drop their contact details, believing the information would be shared with Plaintiff." *Id.*, ¶ 28. The leads generated from the article were instead "diverted to Plaintiff's competitor." *Id.*, ¶ 29.

Likewise, Plaintiff contends that Co-Defendants Ian Hart and Ian Hart Design, LLC operated a website at www.metalbuildings.org (the "Hart Website"). *Id.*, ¶ 46. The Hart Website also, according to Plaintiff, contained its "Duro" mark and redirected to Plaintiff's competitors' website. *Id.*, ¶ 47.

Neither 360Connect nor Mr. Hoogendam are accused of owning or operating the Manning or Hart Websites. Instead, Plaintiff describes 360Connect as offering services that match businesses with pre-screened suppliers across various industries, *i.e.*, connecting buyers with qualified vendors. *Id.*, ¶ 38.

The only allegation of wrongdoing by 360Connect is vague, non-contextual, and cryptic. Specifically, Plaintiff asserts that 360Connect facilitated "this interference" (never defining what the "interference" is) by providing "a platform and advertising services that misrepresented the DURO brand, further redirecting business opportunities from Plaintiff to its competitors." *Id.*, ¶ 37. And 360Connect purportedly uses the services of Co-Defendants Manning and Hart "to post advertisements on their respective websites." *Id.*, ¶ 39. Lumping 360Connect with Co-Defendants Manning and Hart, Plaintiff claims they "knowingly coordinated efforts to mislead consumers and

2

interfere with" Plaintiff's business contracts by redirecting business away from Plaintiff and to its competitors. *Id.*, ¶ 58.

Premised almost exclusively on these flimsy allegations, Plaintiff asserts claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), unfair competition, purportedly under § 1125(c), deceptive and unfair trade practices under Florida law, and trademark infringement under 15 U.S.C. § 1114. As explained below, Plaintiff fails to plead claims against 360Connect and Mr. Hoogendam and the Complaint should be dismissed.

## II.  ARGUMENT

### 1.  The Complaint is a Shotgun Pleading.

Complaints asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions have been harshly criticized by the Eleventh Circuit as shotgun pleadings. *See Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1355 n.9 (11th Cir. 2002). "The unifying characteristic of all types of shotgun pleadings is that they fail to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Peraza v. Recovery Associates, LLC*, No. 19-20052, 2019 WL 13234107, at *2 (S.D. Fla. May 13, 2019) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)); *see also Waxman v. Equitable Life Assur.*, No. 07-80942, 2008 WL 619321, at *2 (S.D. Fla. Mar. 4, 2008) ("The Eleventh Circuit has frowned on such 'shotgun pleading' as it prevents defendants from understanding the nature of their alleged wrongdoing, thereby preventing them from forming reasonable responses to the allegations.").

In *Euro Marine Group, Ltd. v. Legacy Superyachts, et. al.*, No. 0:23-cv-61722-WPD (S.D. Fla. Feb. 26, 2024), the court dismissed a shotgun pleading, explaining:

> The Amended Complaint repeatedly lumps five Defendants together throughout each of the first nine causes of action, rendering it unclear and confusing as to which Defendant is being charged with which conduct. The Eleventh Circuit has explained that "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is improper….This kind of shotgun pleading "fail[s] to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." …. Here, Plaintiff's failure to separately allege facts and claims as to each of these Defendants violates Rule 8 and *Twombly/Iqbal*….

*Id*. at 4 (citations omitted).

Similarly, in its Complaint, Plaintiff lumps 360Connect and Mr. Hoogendam together with four other Co-Defendants. *See, e.g*., ¶ 58-59. Each count of the Complaint is asserted against "Defendants," generally, "without specifying which of the Defendants are responsible for which acts or omissions." *See Weiland, supra*.

True, in some paragraphs, Plaintiff describes conduct undertaken by the Co-Defendants, particularly as relates to their Manning and Hart Websites, forming the basis of its trademark infringement and related unfair competition claims. But as explained below, neither 360Connect nor Mr. Hoogendam are alleged to have ever owned, operated, or controlled those Websites. Nor are either of them accused of "posting" articles or other content to the Manning or Hart Websites, whether referencing Plaintiff or its "Duro" marks or otherwise.

Remarkably, Plaintiff never provides any visual evidence nor copy nor reproduction of the alleged article appearing on the Manning Website or unspecified "advertising content" on the Hart Website on or in which its "Duro" marks appeared. The absence of any graphic depiction of the allegedly infringing materials leaves Defendants with only Plaintiff's vaguely narrated descriptions, adding to the lack of notice of supposed wrongdoing against them.

In short, the Complaint fails to give "adequate notice of the claims" against 360Connect and Mr. Hoogendam "and the grounds upon which each claim rests." *See Weiland, supra*. It is a shotgun pleading that should be dismissed.

### 2. **No Allegations of Trademark Use or Other Wrongdoing**

Generally speaking, Lanham Trademark Act and related unfair competition claims have at their core "use" of another's trademark. For example, liability under 15 U.S.C. § 1125(a) is against:

> Any person who, on or in connection with any goods or services, or any container for goods, <u>uses in commerce</u> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact….

*See also* § 1114 ("Any person who shall, without the consent of the registrant…<u>use in commerce</u> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" shall be liable for trademark infringement).

Further, "'[t]he mere assertion of trademark infringement, without any factual allegations of the nature of the infringement,' is insufficient to provide fair notice. *See D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (quoting *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (finding trademark claims "fail[ed] even the liberal standard of Rule 12(b)(6)" where they "consist[ed] of conclusory allegations unsupported by factual assertions" and thus "d[id] not give the defendants fair notice of the claims against them and d[id] not show, by facts alleged, that [plaintiff] [wa]s entitled to relief.").

As explained above, the allegations against 360Connect and Mr. Hoogendam are scant and ambiguous. They supposedly provide "a platform and advertising services" and use the services

5

of Co-Defendants Manning and Hart "to post advertisements on" the Manning and Hart Websites. DE 7, ¶¶ 37, 39. Thus, the most that can be gleaned from these vague allegations is that 360Connect advertises on websites owned, operated, and controlled by the Co-Defendants.

There are no allegations, however, that any of 360Connect's purported advertisements bore Plaintiff's trademark, or that either of these Defendants "used in commerce" Plaintiff's "Duro" mark or any "colorable imitation" of the mark. Indeed, the alleged use of "Duro" giving rise to Plaintiff's claims occurred exclusively in an <u>article</u> posted to the Manning Website and unspecified "content" on the Hart Website. *See* DE 7, ¶¶ 26-27, 47. Yet neither 360Connect nor Mr. Hoogendam are alleged to have written the article nor posted it to websites they don't own, operate, or control. In the absence of any allegations that these Defendants used Plaintiff's "Duro" mark in commerce, the Complaint fails to state against them any of trademark or related unfair competition claims.

Plaintiff may argue that it alleges that 360Connect and Mr. Hoogendam "used" the "Duro" mark. *See, e.g.*, ¶¶ 43-44. But those allegations are nothing more than "labels, conclusions, and naked assertions" rejected by *Twombly* and *Iqbal*. Again, Plaintiff elected not to provide any graphic depictions of the alleged unauthorized use of its "Duro" marks. Plaintiff fails to provide sufficient factual allegations of use by these Defendants to make claims against them plausible. *See D.B.C. Corp., supra*.

In sum, the Complaint does not allege use of the asserted trademark, does not visually reproduce copy of any such use, and does not allege any other facts supporting claims of trademark infringement or unfair competition against these Defendants. The Court should therefore grant this Motion to Dismiss.

### 3. Duplicative Unfair Competition Claims and Improper Claim Under the Dilution Statute

Plaintiff identifies Count II as an action for "unfair competition" under 15 U.S.C. § 1125(c). But subsection (c) is the dilution statute, and this clearly is not a case for dilution. Further, because there is no federal cause of action for "unfair competition," which merely duplicates a claim for false designation of origin, Count II should be dismissed.

Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a), protects against "false designation of origin," which the Eleventh Circuit has referred to as a "federal cause of action for unfair competition." *Savannah Coll. of Art and Design, Inc. v. Sportwear, Inc*., 872 F.3d 1256, 1261 (11th Cir. 2017). Section 43(c), on the other hand, is the dilution statute.

As an initial matter, it is unclear whether Plaintiff is attempting to assert a dilution or a repetitive false designation of origin claim. While Count II is labeled under the dilution statute, none of its allegations reference the elements of dilution, *i.e*., "(1) the mark is famous; (2) the alleged infringer adopted the mark after the mark became famous; (3) the infringer diluted the mark; and (4) the defendant's use is commercial and in commerce." *White People Humor, LLC v. 904 Now LLC*, No. 24-CV-80232-Rosenberg, 2024 WL 4427684 at *1 (S.D. Fla. June 14, 2024). Adding to the confusion is Plaintiff's random reference in its "Facts" to "dilution of the distinctive quality" of Plaintiff's marks. *See* DE 7, ¶¶ 34, 43, 52.

#### a) Failure to state dilution

To the extent Plaintiff attempts under Count II to state a dilution claim, it has failed to do so. None of the elements, referenced above, appear anywhere in the Complaint. Moreover, Plaintiff's "Duro" mark is clearly not, as a matter of law, "famous."

A trademark is famous under federal law if "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the

mark's owner." *Id*. at *2 (citing 15 U.S.C. § 1125(c)(2)(A)). "Since recognition by the general consuming public is the standard, courts have emphasized that trademarks with 'niche fame' receive no federal trademark dilution protection." *Id*. (citing *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 1372 (Fed. Cir. 2012)). The mark must be "truly prominent and renowned." *Id*. (citing *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320, 1338 (M.D. Fla. 2003), aff'd sub nom. *HBP, Inc. v. Am. Marine Holdings*, 129 F. App'x 601 (11th Cir. 2005) (quoting *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999))).

Examples of famous trademarks are "Budweiser beer, Camel cigarettes, or Barbie dolls." *Id*. (citing *Brain Pharma, LLC v. Scalini,* 858 F. Supp. 2d 1349, 1357 (S.D. Fla. 2012) and rejecting claimed fame of "Florida Man," explaining that niche fame is not protected by federal trademark dilution laws); *Brain Pharma, supra* (same, citing *Dahon N. Am., Inc. v. Hon,* No. 2:11-cv-05835, 2012 WL 1413681, at *9 (C.D. Cal. Apr. 24, 2012) (mark at issue "cannot compare with that of a truly famous mark, such as Coca-Cola")).

Like the marks at issue in *White People Humor* and *Brain Pharma*, Plaintiff's "Duro" mark is clearly not widely recognized by the general consuming public of the United States as a designation of source of the goods or services. It is not a mark comparable to Budweiser beer, Camel cigarettes, Barbie, or Coca-Cola. Therefore, to the extent Plaintiff is attempting to plead a dilution claim, Count II should be dismissed. *See White People Humor* and *Brain Pharma* (granting 12(b)(6) dismissals of legally implausible dilution claims).

### b) duplicative false designation of origin claim

If Plaintiff is, on the other hand, attempting to assert a federal unfair competition claim, Count II is duplicative of Count I and should be dismissed. In *Inskeep v. Baccus Global, LLC*, No. 20-cv-82127, 2024 WL 416357 (S.D. Fla. Feb. 5, 2024), Judge Altman explained:

8

> First, a plaintiff "has no claim to a nonexistent federal cause of action for unfair competition." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 908 (9th Cir. 2002); *see also* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:7 (5th ed. 2023) ("The courts have recognized that there is no federal statutory or common law of general unfair competition."). With respect to unfair competition, the Lanham Act is merely a "jurisdictional statute...[that] does not create the substantive right underlying the claim…." ("[H]ad Congress intended to create an independent federal cause of action for unfair competition, it would ... have directly said [it]."). Instead, a plaintiff "is entitled to assert a cause of action under the Lanham Act for trademark infringement, 15 U.S.C. § 1114, or for false designation of origin, 15 U.S.C. § 1125, or it may assert state law claims for unfair competition."
>
> Second, the Lanham Act already incorporates "a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). Specifically, § 43(a) creates a civil cause of action against anyone who "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1) … As Professor McCarthy has noted, we shouldn't be referring to this "false designation of origin" claim under the Lanham Act as an "unfair competition" claim.

*Id*. at *15-16 (some citations omitted).

The court in *Inskeep* also noted that the plaintiff's unfair competition claims were "duplicative of their false designation of origin claims." *Id*. at *16. In fact, each claim alleged likelihood of confusion, mistake, or deception, which was "unsurprising because the language of Counts V and VI is lifted from § 43(a) of the Lanham Act, which prohibits anyone from engaging in any 'false designation of origin' that's 'likely to cause confusion, or to cause mistake, or to deceive[.]'" *Id*. (citing 15 U.S.C. § 1125(a)(1)). Because Counts V and VI in *Inskeep* alleged "a non-existent cause of action—and because they're duplicative of Counts III and IV," the court held they were subject to dismissal. *Id*. at *17.

In this case, just as in *Inskeep*, Count II sets forth a "non-existent cause of action" for federal unfair competition that bears all the hallmarks of a false designation of origin claim, which is asserted in Count I. Indeed, Count II parrots the false designation of origin statute, § 1125(a), *e.g.*, "likely to cause confusion or mistake, or to deceive…." DE 7, ¶ 69. Because Count II alleges a nonexistent claim and is duplicative of Count I, it should be dismissed.

4. **Mr. Hoogendam is Not Alleged to Have Personally Infringed Plaintiff's Purported Trademark and is Otherwise Protected by the Corporate Shield Doctrine.**

Plaintiff does not allege any wrongdoing by Mr. Hoogendam, a Texas resident, and certainly not in his personal as opposed to corporate capacity. In any event, Mr. Hoogendam is protected by the corporate shield doctrine from being sued in Florida.

To begin with, to be personally liable, corporate officers or directors must do more than merely control corporate affairs: they must personally take part in infringing activities or specifically direct employees to do so. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir. 2022). Nowhere does Plaintiff allege that Mr. Hoogendam engaged in any such activities. Therefore, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

Further, Florida courts do not have personal jurisdiction over corporate officers merely because they would have jurisdiction over the corporation itself. *Litke v. P.B. Express, Inc.*, No. 3:23-cv-1266, 2024 WL 4373634 at *6 (M.D. Fla. Oct. 2, 2024) (citing *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993); *Kitroser v. Hurt*, 85 So. 3d 1084, 1088 (Fla. 2012)). Specifically, the corporate shield doctrine provides that "a nonresident employee-defendant who works only outside of Florida, commits no acts in Florida, and has no personal connection with Florida will not be subject to the personal jurisdiction of Florida courts simply because he or she is a corporate officer or employee." *Frida Kahlo Corp. v. Pinedo*, No. 1:22-CV-22399-Gayles/Torres, 2023 WL

9473827 at *5 (S.D. Fla. Dec. 28, 2023) (citing *Kitroser, supra*, at 1089). This is because "it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id*. (citing *Doe, supra*, at 1006).

Further, while intentional misconduct by an individual defendant may constitute an exception to the corporate shield doctrine, "Florida courts require that the intentional tort be committed for the corporate officer's personal benefit." *Id*. (citing *VIS Holdings Corp. v. Cooper*, No. 07-20882, 2007 WL 9702900 at *6 (S.D. Fla. Dec. 11, 2007); *Smith v. Panera Bread*, No. 08-60697-Civ-Jordan, 2009 WL 10667191 at *8 ("[M]ere allegations of intentional misconduct on behalf of the employer ... without more are not enough to avoid the corporate shield doctrine.")).

A few examples illustrate these points. In *Frida Kahlo, supra*, the plaintiff sued an individual claiming she committed tortious acts within Florida by sending plaintiffs' licensees, including a Florida-based licensee, cease and desist letters misrepresenting that she is the rightful owner of the subject name and image. 2023 WL 9473827 at *4. Because "the letters were sent in her capacity as an officer of … and for the benefit of" the company, and "not herself," the individual defendant was protected by the corporate shield doctrine. *Id*. at *5. Even if the corporate officer "did commit an intentional tort," the plaintiffs did "not allege that [she] gained any pecuniary or personal benefit from sending the cease and desist letters." *Id*. The court therefore dismissed the complaint for lack of personal jurisdiction over the corporate officer.

Similarly, in *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, No. 1:13-cv-21297, 2014 WL 11880964 (S.D. Fla. Jan. 24, 2014), a defendant asserted a declaratory judgment counterclaim against a Swiss watch manufacturer and its corporate officer. Applying the corporate shield doctrine, the court reasoned:

> Clearly, the Counter-Plaintiffs' basis for personal jurisdiction over Mr. Carrion on the facts alleged is via his role as a corporate officer at Buccellati Watches. Mr. Carrion is not engaging in business in the state under § 48.193(1)(a)(1), committing tortious acts within the state under § 48.193(1)(a)(2), or doing business in Florida under § 48.193(2), in his personal capacity. The corporate shield doctrine provides that "acts performed by a person exclusively in his corporate capacity not in Florida but in a foreign state may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state." …. Thus, Mr. Carrion falls within the purview of the corporate shield doctrine.

*Id*. at *5 (citing *Kitroser, supra*; *Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla. Dist. Ct. App. 2006) ("The corporate shield doctrine draws a distinction between a corporate officer acting on his own and a corporate officer acting on behalf of his corporation. Under the corporate shield doctrine, any activity in one's capacity as a corporate officer or director is exempted from consideration in support of the exercise of long-arm jurisdiction over said officer or director.")).

The court in *Buccellati,* just like the court in *Frida Kahlo*, rejected the counter-plaintiffs' argument that the corporate officer was excepted from the corporate shield doctrine because he committed fraud. The court reasoned that the counter-plaintiffs had "not set out any specific acts Mr. Carrion has personally committed outside his corporate capacity that would amount to fraud or intentional misconduct." *Id*. at *6 (citing *Carmel & Co. v. Silverfish, LLC*, No. 12-cv-21328, 2013 WL 1177857 at *5 (S.D. Fla. Mar. 21, 2013)). Thus, the corporate officer was protected by the corporate shield doctrine and there was no personal jurisdiction over him under Florida's long-arm statute. *Id*.

And in *Litke, supra*, the only allegations against the individual defendant were that he was President and/or CEO of his company. 2024 WL 4373634 at *7. There were no allegations that the defendant "worked in Florida, committed any action in Florida, or had any personal connection to Florida." *Id*. The court stated that an individual "will not be subject to the personal jurisdiction of

12

Florida courts simply because he … is a corporate officer ….." *Id*. (citing *Kitroser*, 85 So. 3d at 1089). Reasoning that "the Florida long-arm statute requires a corporate officer have some connection to Florida to be subject to personal jurisdiction here" and that no such connection was alleged, the court dismissed the complaint for lack of personal jurisdiction. *Id*.

In this case, Plaintiff's sole allegations against Mr. Hoogendam that are not indiscriminately lumped together with 360Connect and/or the Codefendants are that he is a "citizen of the State of Texas" and "member" of 360Connect. DE 7, ¶ 14. These allegations are plainly insufficient, <u>facially</u>, to even establish personal jurisdiction, let alone defeat the corporate shield doctrine as to Mr. Hoogendam.

Indeed, Plaintiff never provides any basis for personal jurisdiction against Mr. Hoogendam, personally. Instead, Plaintiff alleges blanket personal jurisdiction over "Defendants" claiming they "falsely advertised and misrepresented the origin of products," "caused injury to Plaintiff," and "regularly conduct or solicit business" in Florida. DE 7, ¶ 6. No provision of Florida's long arm statute, chapter 48, is even cited. And Mr. Hoogendam is not alleged to have ever used Plaintiff's mark and could not have, therefore, engaged in any injurious acts, whether in Florida or elsewhere. Nor are there any allegations that Mr. Hoogendam personally conducts or solicits business, whether in Florida or elsewhere.

Accordingly, the Complaint "fails to include sufficient allegations … to establish a prima facie case of personal jurisdiction." *Stinson v. Memphis Light Gas & Water*, No. 23-cv-24733, 2024 WL 2258199 at *2 (S.D. Fla. May 15, 2024) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Stated differently, the Complaint does not survive "a facial challenge" to personal jurisdiction. *Id*. at *4 (holding plaintiff "failed to meet his threshold burden 'of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction'" and

that defendants, through sworn declarations, "set forth sufficient factual challenges indicating they are not subject to jurisdiction by this Court."); *Litke, supra* (complaint did not survive facial challenge to personal jurisdiction).

Even assuming, *arguendo*, Plaintiff had alleged a basis for personal jurisdiction over Mr. Hoogendam (it did not), the overwhelming facts disprove any. As set forth in Mr. Hoogendam's accompanying Declaration, attached as the **Exhibit** hereto, he has:

a)   never operated, conducted, engaged in, or carried out a business or business venture in Florida; [¶ 4]

b)   never had an office or agency in Florida; [¶ 5]

c)   never committed a tortious act within Florida; [¶ 6]

d)   never owned, used, possessed, or held a mortgage or other lien on any real property within Florida; [¶ 7]

e)   never contracted to insure a person, property, or risk located within Florida; [¶ 8]

f)   never caused injury to persons or property within Florida, whether arising from an act or omission outside of Florida or otherwise; [¶ 9]

g)   never entered into, nor breached, a contract in Florida or to which Florida choice of law has ever applied, or which contains any provision whereby they submitted to personal jurisdiction in Florida; [¶ 10]

h)   never held any bank accounts or records in Florida; [¶ 11]

i)   never leased or owned any real property in Florida; [¶ 12]

j)   never worked in Florida; and [¶ 13]; and

k)   never engaged in substantial and not isolated activity within Florida. [¶ 14].

In short, Mr. Hoogendam has no contacts with or connection to Florida.[1]

---

[1] Because personal jurisdiction under the long-arm statute is not satisfied, it is unnecessary "to consider whether the exercise of jurisdiction in this case satisfies the Due Process Clause." *See PeopleShare, LLC v. Vogler*, 601 F. Supp. 3d 1276, 1285 (S.D. Fla. 2022).

Finally, the intentional tort exception does not apply because it requires that the alleged misconduct "be committed for the corporate officer's personal benefit." *Frida Kahlo, supra*, 2023 WL 9473827 at *5; *Smith, supra* ("[M]ere allegations of intentional misconduct on behalf of the employer ... without more are not enough to avoid the corporate shield doctrine."). Moreover, any purported activities must have been performed by the corporate officer *in Florida* and not in a foreign state. *See Buccellati, supra*, 2014 WL 11880964 at *5. Plaintiff has "not set out any specific acts" that Mr. Hoogendam "personally committed" "outside his corporate capacity" and in Florida that would amount to intentional misconduct overcoming the corporate shield doctrine. *See id*; *see also Frida Kahlo*, 2023 WL 9473827 at *5 (no allegations that corporate officer "gained any pecuniary or personal benefit from sending the cease and desist letters.").

In sum, Plaintiff has not alleged any facts supporting personal jurisdiction over Mr. Hoogendam, including facts sufficient to overcome the corporate shield doctrine, and Mr. Hoogendam's Declaration forecloses any argument to the contrary. The Complaint should be dismissed under Rule 12(b)(2).

## **Conclusion**

For all of the foregoing reasons, the Complaint fails to state a claim under Rule 12(b)(6) or establish personal jurisdiction over Mr. Hoogendam under Rule 12(b)(2). It should therefore be dismissed.

WHEREFORE, Defendants, 360Connect, LLC and Mr. Jeffrey Hoogendam, respectfully request that the Court dismiss the Complaint and for such other and further relief as the Court deems appropriate.

Dated: March 10, 2025                           Respectfully submitted,


                                                    By:  */s/ Matthew S. Nelles*
                                                    Matthew S. Nelles
                                                    Florida Bar No.: 009245
                                                    Joshua Cooper
                                                    Florida Bar No.: 117658
                                                    matt.nelles@johnsonmartinlaw.com
                                                    Johnson & Martin, P.A.
                                                    500 West Cypress Creek Rd., Suite 430
                                                    Ft. Lauderdale, FL 33309
                                                    T:  (954) 790-6698
                                                    Eservice: kerty.apelt@johnsonmartinlaw.com

                                                    *Attorneys for Defendants 360Connect, LLC and Jeffrey Hoogendam*


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served on March 10, 2025 with a copy of this document via the Court's ECF system.

                                                                    */s/ Matthew S. Nelles*
                                                                  Matthew S. Nelles


## SERVICE LIST

Ama N. Appiah, Esq.
Email: ama.appiah.2003@gmail.com
Law Office of Ama N. Appiah, P.A
721 1st Ave N Ste 202,
St Petersburg, FL 33701-3603