# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# WEST PALM BEACH DIVISION
## Case No. 9:24-cv-81550-RLR

**DURO BEAM, LLC,**

**Plaintiff,**

**v.**

**WILLIAM E. MANNING, et al.,**

**Defendants.**

## AMENDED COMPLAINT FOR TRADEMARK INFRINGEMENT

## I. Introduction

1.      This amended complaint is filed by Duro Beam, LLC ("Plaintiff") against William Manning, WEM Global, Inc., 360Connect, LLC, Jeff Hoogendam, Ian Hart, and Ian Hart Design, LLC, ("Defendants") in response to the Court's previous dismissal of the original complaint as a shotgun pleading. Plaintiff seeks to address the court's concerns by providing a detailed and specific account of the alleged trademark infringement, false advertising, and unfair competition perpetrated by Defendants.

2.      Duro Beam, LLC is a reputable provider of steel building kits, known for its high-quality products and strong brand presence. Defendants are alleged to have engaged in unauthorized use of Plaintiff's trademarks and misleading advertising practices, which have caused significant harm to Plaintiff's business and reputation.

3.     This amended complaint aims to establish the connections between Defendants and their coordinated efforts to mislead consumers and interfere with Plaintiff's business operations. Plaintiff will demonstrate how each Defendant's actions contributed to the infringement and deception, supported by evidence from communications, proposed agreements, and other relevant documents.

4.     Plaintiff seeks relief from the court to prevent further harm and to hold Defendants accountable for their actions, which have violated federal and state laws governing trademark rights and fair business practices. Exhibits attached to this complaint will provide additional support for the claims made herein.

## II. Parties

**Plaintiff:**

5.     **Duro Beam, LLC:** Duro Beam, LLC is a limited liability company (also referred to herein as "Plaintiff" or "Duro Beam") engaged in the business of providing high-quality steel building kits for residential and commercial purposes. Plaintiff is known for its durable and customizable products, and it operates through various websites integral to its business operations.

6.     Plaintiff is organized under the laws of the State of Florida and has its principal place of business in Florida.

**Defendants:**

7.     **William Manning:** An individual domiciled in the State of Florida, domiciled at 5911 Wedgewood Village Circle, Lake Worth, Florida - 33463 and associated with WEM Global, Inc. (also referred to herein as "Manning" or "Defendant Manning").

8.     **WEM Global, Inc.:** A corporation organized under the laws of the State of Florida, having its principal place of business at 5911 Wedgewood Village Circle, Lake Worth, Florida- 33463 (also referred to herein as "WEM Global"). The company provides advertising, and marketing services.

9.     Defendant Manning is the Registered Agent and President of Defendant WEM Global, Inc.

10.    **360Connect, LLC:** 360Connect, LLC is a limited liability company organized under the laws of the State of Texas with its principal place of business at 12416 Hymeadow Dr, Austin, TX 78750 (also referred to herein as "360Connect"). It provides services that match businesses with pre-screened suppliers across various industries.

11.    **Jeffrey Hoogendam:** An individual and member of 360Connect, LLC, domiciled in the State of Texas, domiciled at 5926 Balcones Drive, Suite 130, Austin, Texas 78731 (also referred to herein as "Hoogendam" or "Defendant Hoogendam").

12.    **Ian Hart:** An individual domiciled in the State of North Carolina, domiciled at 1710 Venezia Way Apex, North Carolina, 27502-4736 (hereinafter referred to as "Hart" or "Defendant Hart"). Defendant Hart is associated with Ian Hart Design, LLC.

13.    **Ian Hart Design, LLC:** A limited liability company organized under the laws of the State of North Carolina with its principal place of business at 1710 Venezia Way, Apex, NC 27502-4736 (hereinafter referred to as "Ian Hart Design" or "Defendant Ian Hart Design").

## III. Jurisdiction and Venue

14.     **Subject Matter Jurisdiction:** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as this case arises under the Lanham Act, 15 U.S.C. § 1125, which governs trademark infringement and unfair competition claims. Plaintiff seeks relief for the unauthorized use of its trademarks and related deceptive practices by Defendants.

15.     **Personal Jurisdiction:** The Court has personal jurisdiction over each Defendant based on the following:

a.      **William Manning and WEM Global, Inc.:** The Court has personal jurisdiction over William Manning and WEM Global, Inc. because they have engaged in business activities within Florida that have harmed Duro Beam. Manning and WEM Global are alleged to have posted misleading content on "metal-buildings.org", diverting leads from Duro Beam to competitors.

b.      **360Connect, LLC and Jeffrey Hoogendam:** The Court has personal jurisdiction over Jeffrey Hoogendam because he personally orchestrated, directed, and supervised the infringing activities at issue, knowing they would target and cause harm to Duro Beam, a Florida company. Hoogendam was not a passive corporate officer; he was the principal architect of the deceptive lead diversion scheme, personally negotiating agreements, instructing affiliates to use Duro Beam's trademarks, and overseeing advertising strategies designed to mislead consumers in Florida. These acts were performed for his direct personal benefit and profit, making personal jurisdiction proper under Florida's long-arm statute and the intentional tort exception to the corporate shield doctrine. Specifically, 360Connect facilitated misleading advertising practices that redirected business opportunities from Plaintiff to its competitors, causing harm to Duro Beam, a Florida-based company. Upon information and belief, Mr. Hoogendam regularly monitored and directed advertising metrics that specifically tracked lead generation and sales

conversions in Florida, including traffic diverted from Duro Beam's Florida-based operations. Plaintiff believes discovery will reveal communications where Mr. Hoogendam instructed affiliates to target Florida consumers searching for Duro Beam steel buildings, with knowledge that Duro Beam's principal operations are based in Florida.

c.   **Ian Hart and Ian Hart Design, LLC:** The Court has personal jurisdiction over Ian Hart and Ian Hart Design, LLC due to their operation of websites, including "metalbuildings.org", which contained misleading advertising and unauthorized use of Duro Beam's trademarks. These actions caused harm to Duro Beam's business in Florida.

16.   **Venue:** Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Defendants' actions, including the operation of websites and the dissemination of misleading advertisements, have had a significant impact on the Plaintiff's business operations in Florida.

17.   Plaintiff asserts that the Court's jurisdiction and venue are appropriate for adjudicating the claims against Defendants, given their business activities and the resulting harm within this district.

## IV. FACTUAL BACKGROUND

### Plaintiff And Its Trademark

18.   Duro Beam, LLC is a well-established provider of high-quality steel building kits, known for their durability and customization options. The company has been operating for over a decade and has built a strong reputation in the industry. Plaintiff owns several trademarks, including:

| MARK | REG. NO. | SERIAL. NO. | CLASS | GOODS/SERVICES |
|---|---|---|---|---|
| DURO BUILDINGS | 4698229 | 86159392 | 6 | Prefabricated metal buildings for industrial applications |
| DURO STEEL | 7704118 | 98567756 | 6 | Metal doors; Roller doors of metal; Pre-fabricated metal building assembly kits; Prefabricated metal buildings |
| DURO BEAM | 4651757 | 86159401 | 6 | Prefabricated metal buildings for industrial applications |
| DURO SPAN | 4706401 | 86159409 | 6 | Prefabricated metal buildings for industrial applications |
| DURO STORAGE | 7549216 | 98256716 | 35 | Distributorship services in the field of pre-engineered steel storage buildings; Distributorships in the field of pre-engineered steel storage buildings; On-line retail store services featuring pre-engineered steel storage buildings; Retail store services featuring pre-engineered steel storage buildings; Reseller services, namely, distributorship services in the field of pre-engineered steel storage buildings; Wholesale distributorships featuring pre-engineered steel storage buildings |
| DURO | 7703754 | 98563613 | 35 | Distributorship services in the field of pre-engineered steel buildings, steel doors, and steel building kits; |

| | | | | |
|---|---|---|---|---|
| | | | | Distributorships in the field of pre-engineered steel buildings, steel doors, and steel building kits; On-line retail store services featuring pre-engineered steel buildings, steel doors, and steel building kits; Reseller services, namely, distributorship services in the field of pre-engineered steel buildings, steel doors, and steel building kits; Retail store services featuring pre-engineered steel buildings, steel doors, and steel building kits; Wholesale distributorships featuring pre-engineered steel buildings, steel doors, and steel building kits |
| DURO DOORS | | 98256727 | 35 | Distributorship services in the field of pre-engineered steel storage buildings; Distributorships in the field of pre-engineered steel storage buildings; On-line retail store services featuring pre-engineered steel storage buildings; Retail store services featuring pre-engineered steel storage buildings; Reseller services, namely, distributorship services in the field of pre-engineered steel storage buildings; Wholesale distributorships featuring pre-engineered steel storage buildings |

19.     Plaintiff operates its business through various websites, which are integral to generating business leads and customer engagement. These platforms are essential for promoting Plaintiff's high-quality steel building kits and related products, thereby driving traffic and business leads essential for the company's operations and growth. These websites ("DURO Domains") include:

- Duro Buildings®: www.durobuildings.com
- Duro Span®: www.durospan.net
- Duro Storage®: www.durostorage.com
- Duro Beam®: www.durobeambuildings.com
- Duro Doors™: www.durodoors.com

Plaintiff has owned these domains since as early as July 2008.

**Timeline of Events and Defendants' Unauthorized Use of DURO Trademarks and Misrepresentation of DURO Brand**

20.     In and around April 2024, Plaintiff noticed a significant drop in leads through their websites, which had been happening for several months. Upon investigating the cause of this drop, Plaintiff became aware of several websites using Plaintiff's trademarks, disguised as a "review" of Plaintiff's products. The websites in question are *metalbuildings.org* and *metal-buildings.org*.

21.     Specifically, Plaintiff came across an article titled "Duro Steel Building Review" on the website located at www.metal-building-homes.com/duro-steel-buildings-review/. Although the date of publication remains unclear, this article in the above-mentioned link made multiple references to Plaintiff's DURO marks. This article included a lead generation section where genuine readers could drop their contact details, believing the information would be shared with Plaintiff. Upon further investigation, Plaintiff came across another website,

www.metalbuildings.org/quonset-hut/durospan,                           and
www.metal-buildings.org/duro-steel-buildings/, infringing Plaintiff's intellectual
property and containing lead generation columns. All website screenshots are
attached herein as Exhibit A.

22.     In and around April-May 2024, a representative of Plaintiff filled out a
lead generation form on these websites and subsequently received a response
from the sales representative of a competitor, SteelMaster, evidencing that leads
were being diverted to competitors. Responding to the competitor's initial email,
Plaintiff specifically informed the representative of SteelMaster that they were
*"looking for a Duro Span building"* called *"Quonset Homes"* to which the sales
representative clarified that they were *"not Duro Span"*. Emails received from
SteelMaster are attached herein as Exhibit B.

23.     Upon investigation, Plaintiff discovered that Jeffrey Hoogendam
personally conceived, directed, and implemented the strategy to use infringing
websites to divert Duro Beam's leads to competitors. As the operational head of
360Connect, Hoogendam controlled which 'affiliates' would post misleading
content, selected targets—including Duro Beam—and actively coordinated the
misuse of Duro Beam's trademarks. He communicated directly with these
affiliates, monitored their activities, and intentionally approved advertisements
and lead generation funnels that falsely represented an association with Duro
Beam.

24.     In and around April 2024, 360 Defendants, through their attorney Ms.
Jean Warshaw, initially rejected Plaintiff's allegations of trademark
infringement, misleading advertisement and diversion of leads. However, when
Plaintiff informed Ms. Warshaw that they are prepared to take legal action
against the infringing websites and 360 Defendants, Ms. Warshaw acknowledged
the business relationship between 360 Defendants and the infringing websites
and agreed to settle the matter through mutually agreed-upon terms.

25.     Between April 26 and April 30, 2024, Plaintiff engaged in written settlement negotiations with Ms. Warshaw regarding the unauthorized use of Plaintiff's intellectual property by two unnamed "affiliates" operating the websites *metalbuildings.org* and *metal-buildings.org* and the potential involvement of 360 Defendants in such acts. Exhibited herein as Exhibit C is the email trail between Plaintiff's representative Bruce Shore and 360 Defendants' attorney Jean Warshaw.

26.     In the course of written settlement negotiations, Plaintiff and 360 Defendants, through their counsel, Ms. Jean Warshaw, outlined preliminary terms for resolving Plaintiff's claims regarding unauthorized use of Plaintiff's intellectual property. As part of the proposed resolution, 360 Defendants agreed to disclose the identities of the "affiliates" operating the infringing websites, *metalbuildings.org* and *metal-buildings.org*, in exchange for Plaintiff's agreement not to notify other industry participants, contingent on ongoing good-faith negotiations.

27.     Plaintiff further proposed, and 360 Defendants acknowledged, a settlement framework under which Plaintiff would receive a total of $30,000 - $10,000 each from the two affiliates and 360 Defendants. The terms also required that all parties cease using Plaintiff's name, images, and related intellectual property, and that the affiliates (and potentially 360 Defendants) provide one year of dedicated lead generation exclusively to Plaintiff. Ms. Warshaw subsequently shared a draft agreement reflecting these terms, noting it used placeholder references for the affiliates and was subject to further review. Attached herein as Exhibit D are the settlement agreement and lead generation agreement shared by Ms. Jean Warshaw.

28.     Throughout these negotiations, Mr. Hoogendam was not merely a passive participant but the principal decision-maker, dictating settlement positions and personally approving the continued operation of infringing content while leveraging it to extract business concessions. His personal involvement extended

to instructing Ian Hart on content removal and redirect strategies, as confirmed by Hart's own admissions.

29. Throughout the correspondence, 360 Defendants were actively involved in the negotiation process and appeared to be operating in coordination with the "affiliates". 360 Defendants, through its counsel, offered consideration on behalf of itself and its affiliates in exchange for Plaintiff's forbearance, thereby acknowledging its role in and benefiting from the infringing activities.

30. On May 8, 2024, Ms. Warshaw, through a formal letter to Plaintiff's counsel, identified Defendants William Manning of WEM Global, Inc. and Ian Hart of Ian Hart Design, LLC as the above-mentioned "affiliates", who are the owners and operators of the infringing website. She characterized 360 Defendants as a passive "advertiser", and disclaimed any editorial control over website content, trademarks, or images. These statements, while attempting to distance 360 Defendants from liability, confirm that both 360 Defendants had knowledge of the infringing content and played an active role in negotiating its resolution, further supporting their inclusion as a liable party. Letter dated May 8, 2024 by Ms. Warshaw is exhibited herein as Exhibit E.

31. In the letter dated 8 May 2024, Ms. Warshaw claims that *"They* (Defendants Manning and Hart) *are third party contractors who operate their own websites and post advertisements for 360Connect and other advertisers"*. Additionally, Ms. Warshaw admitted in the said letter that *"360Connect is merely an advertiser"*.

32. On June 4, 2024, Plaintiff issued cease-and-desist letters to 360 Defendants, demanding that they cease their unauthorized use of the DURO marks in their misleading advertising.

33. On July 13, 2024, another attorney for 360 Defendants, Mr. Bill Rhea, provided a general email response asserting that his clients did not misrepresent

the Plaintiff's intellectual property. In this correspondence, the attorney acknowledged and provided the contact details of Defendants Manning, WEM Global, Ian Hart, and Ian Hart Design, stating that these Defendants were involved in the misleading advertisements and unauthorized use of the Plaintiff's intellectual property.

34.   On June 6, 2024, Plaintiff issued cease-and-desist letters to Defendants Hart and Ian Hart Design, demanding they cease their infringing and unauthorized use of the Plaintiff's intellectual property. Defendant Hart alleged a vague explanation through emails dated July 13 and 16, 2024, asserting their lack of involvement with any of the websites, affiliate shops, or social media accounts cited in our cease and desist. Defendant Hart's email dated July 13 and 16, 2024 are attached herein as Exhibit F.

35.   In the email dated July 16, 2024, Defendant Ian Hart claims that *"At 360 Connect's request, I went ahead removed the single page of Duro content from my site in good faith to avoid any further conflict"*, *"I spoke again with my affiliate rep again and this time she said the 360 attorney suggested it would be better for me to take my entire MetalBuildings.org site offline"*, *"I had no idea the 360 team knew about the hyphenated and e-comm sites. That information was not shared with me up front."*, *"When I pointed out that I have nothing to do with the Metal-Buildings site or the Metal-Building-Homes.com site or any type of e-comm site, Jeff told her that those properties were not mine and that he knew who owned the hyphenated domains."*. Additionally, Defendant Ian Hart claims, *"Weeks later, 360 Connect's attorney and Jeff contacted me again and asked me to pay thousands of dollars to them for a settlement with Duro"*.

36.   On June 6, 2024, Plaintiff issued cease-and-desist letters to Defendants Manning and WEM Global, demanding they cease their unauthorized use and misrepresentation of the DURO Marks.

37.     On June 11, 2024, Defendants Manning and WEM Global responded to these notices, acknowledging ownership of the infringing website www.metal-buildings.org, but unfortunately, continued their unauthorized use and misrepresentation of the Plaintiff's intellectual property.

38.     Upon information and belief, Defendants WEM Global and Defendant Hoogendam notified Defendant Hart of the trademark infringement earlier in 2024. After being notified, Defendant Hart attempted to remove evidence of his infringement of the Plaintiff's intellectual property by removing the infringing content and changing web hosting providers. During this transition, Defendant Hart claimed *"I had to change the web hosting in 2022 and I lost access to those old info@metalbuildings.org during that transition",* which could contain crucial information regarding his infringing activities, suggesting a deliberate attempt to hide evidence of his misconduct. Specifically, Defendant Hart removed DURO-related content from his website and created a 301 redirect to Plaintiff's "www.durospan.net".

### Count 1: Trademark Infringement (15 U.S.C. § 1125(a)) against Defendants Ian Hart, Ian Hart Design, LLC, William Manning, WEM Global, Inc., Jeff Hoogendam and 360Connect, LLC:

39.     Plaintiff Duro Beam, LLC asserts a claim of trademark infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against Defendants Ian Hart, Ian Hart Design, LLC, William Manning, WEM Global, Inc., Jeff Hoogendam, and 360Connect, LLC.

40.     The Defendants are alleged to have engaged in a coordinated effort to use Plaintiff's trademarks without authorization, leading to consumer confusion and dilution of the distinctiveness of the Plaintiff's brand.

41.     Defendant Jeffrey Hoogendam, acting in his individual capacity, directly facilitated and authorized the unauthorized use of Plaintiff's trademarks. He

personally instructed the creation and placement of misleading advertisements, approved the diversion of consumer leads away from Duro Beam, and controlled the affiliate relationships that perpetuated the infringing activities. These were deliberate acts of trademark infringement orchestrated by Mr. Hoogendam himself, not incidental conduct of 360Connect.

42.     Defendant William Manning, through WEM Global, Inc., are alleged to have posted misleading content on "metal-buildings.org", using Plaintiff's intellectual property to intentionally divert leads intended for Plaintiff to its competitors. This conduct resulted in consumer confusion and a loss of business opportunities for Plaintiff. Despite acknowledging ownership of the infringing website, Defendants continued their unauthorized use and misrepresentation of Plaintiff's intellectual property, further exacerbating the harm to Plaintiff's business.

43.     Defendant Ian Hart, through Ian Hart Design, LLC, and alleged to have owned and operated the website "metalbuildings.org", which prominently featured Plaintiff's DURO marks without authorization. This unauthorized use misled consumers into believing they were interacting with Plaintiff's brand, causing significant harm to Plaintiff's reputation and business interests. The misleading content on "metalbuildings.org" created consumer confusion, diverting potential leads and business opportunities intended for Plaintiff to competitors, thereby diluting the distinctiveness of Plaintiff's brand.

44.     360 Defendants are alleged to have facilitated the unauthorized use of Plaintiff's trademarks through their advertising services. They misrepresented Plaintiff's brand, causing consumer confusion and harm to Plaintiff's business. Despite attempts to distance themselves from liability, 360 Defendants actively participated in settlement negotiations and offered consideration on behalf of themselves and their affiliates, acknowledging their role in and benefiting from the infringing activities.

45.    The actions of Defendants have caused significant harm to Plaintiff's business, including loss of goodwill, consumer confusion, and diminished market presence. The unauthorized use of Plaintiff's intellectual property has diluted their brand's distinctiveness and damaged its reputation in the industry.

## Count 2: False Advertising (15 U.S.C. § 1125(a)) against Defendants Ian Hart, Ian Hart Design, LLC, William Manning, WEM Global, Inc., Jeff Hoogendam and 360Connect, LLC:

46.    Plaintiff Duro Beam, LLC asserts a claim of false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against Defendants Ian Hart, Ian Hart Design, LLC, William Manning, WEM Global, Inc., Jeff Hoogendam and 360Connect, LLC.

47.    Defendant William Manning, through WEM Global, Inc., are alleged to have engaged in false advertising by using Plaintiff's intellectual property on "metal-buildings.org". This misleading content diverted business opportunities from Plaintiff to competitors, evidenced by the acknowledgment of ownership of the infringing website and continued unauthorized use.

48.    Defendant Ian Hart, through Ian Hart Design, LLC, are alleged to have used misleading advertisements on "metalbuildings.org" that misrepresented Plaintiff's trademarks. The website included a lead generation section where consumers believed they were interacting with Plaintiff's brand, but leads were diverted to competitors, causing consumer confusion.

49.    360 Defendants are alleged to be involved in advertising services that misrepresented Plaintiff's trademarks. Their role in facilitating misleading advertisements contributed to consumer confusion and harm to Plaintiff's business, as evidenced by their active participation in settlement negotiations among other admittance by other Defendants. This conduct constitutes unfair competition by deliberately free-riding on Duro Beam's established goodwill and

brand recognition to divert business for their own competitive advantage, beyond mere trademark confusion.

**Count 3: Unfair Competition (Fla. Stat. § 501.201, et seq.) against Defendants Ian Hart, Ian Hart Design, LLC, William Manning, WEM Global, Inc., Jeff Hoogendam and 360Connect, LLC:**

50.    Plaintiff claims that Defendants' actions constitute unfair competition under both federal and state laws, including the Florida Deceptive and Unfair Trade Practices Act.

51.    Defendant William Manning, through WEM Global, Inc., are alleged to have used Plaintiff's intellectual property on "metal-buildings.org" to engage in unfair competition. This conduct misled consumers and diverted leads intended for Plaintiff, causing harm to Plaintiff's business.

52.    Defendant Ian Hart, through Ian Hart Design, LLC, are alleged to have engaged in unfair competition by misleading consumers and diverting business opportunities from Plaintiff through deceptive practices on "metalbuildings.org". The unauthorized use of Plaintiff's intellectual property caused harm to Plaintiff's business interests.

53.    360 Defendants are alleged to have facilitated unfair competition by misrepresenting Plaintiff's brand through their advertising services. Their involvement in misleading advertisements led to consumer confusion and harm to Plaintiff's business, as evidenced by their acknowledgment of the business relationship with the infringing websites, among other activities. Their actions reflect a calculated attempt to exploit Duro Beam's goodwill for commercial gain, capitalizing on Duro Beam's reputation to mislead consumers and improperly divert market opportunities.

**Count 4: Contributory Infringement against Defendant Jeff Hoogendam
and 360Connect, LLC (360 Defendants):**

54.   360 Defendants had knowledge of the infringing activities and provided
assistance or resources that facilitated those activities. Their active participation
in settlement negotiations and acknowledgment of the business relationship with
the infringing websites suggest they contributed to the infringement of Plaintiff's
trademarks.

55.   Plaintiff alleges that 360 Defendants despite claiming to lack control over
the content and activities of affiliate websites as seen in Ms. Jean Warshaw's
formal letter (Exhibit E), had direct involvement in content removal, negotiation
of settlements, and infrastructure management indicating a high level of control
and active participation in the infringing activity.

56.   Defendant Jeffrey Hoogendam personally induced and directed the
infringing conduct by Manning, Hart, and their companies. He exercised
substantial control over the infringing websites and advertisements, and
knowingly provided critical resources - including funding, platform access, and
marketing directives - that enabled the infringing activities. His role was not
passive; it was central, intentional, and knowing.

**Count 5: Tortious Interference with Business against 360Connect, LLC
and Jeff Hoogendam (360 Defendants):**

57.   Defendant Jeffrey Hoogendam intentionally interfered with Duro Beam's
business relationships by engineering a scheme to divert leads through false
advertising and misuse of trademarks. His interference was calculated to harm
Duro Beam, personally overseen by him, and executed through 360Connect's
affiliate network under his direct command. These actions were undertaken for
Mr. Hoogendam's personal and business financial gain and constitute egregious
interference with Plaintiff's business.

58.     360 Defendants are alleged to intentionally interfered with Plaintiff's business relationships by diverting leads and misrepresenting Plaintiff's brand. Their actions resulted in economic harm and loss of business opportunities for Plaintiff, as evidenced by the misleading advertisements and unauthorized use of Plaintiff's intellectual property.

59.     Among all Defendants, Jeffrey Hoogendam was the primary architect of the infringing scheme. His personal involvement, profit motive, and direct oversight of the deceptive practices make him individually liable for the harms suffered by Plaintiff Duro Beam, LLC.

## VI. Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor and grant the following relief:

60.     **Permanent Injunctive Relief:** An order permanently enjoining Defendants, their agents, representatives, employees, and all persons acting in concert with them from:

    a.     Using Plaintiff's intellectual property in any manner that infringes upon Plaintiff's rights;

    b.     Engaging in any false advertising or deceptive practices that misrepresent Plaintiff's brand or redirect business opportunities to competitors;

61.     **Monetary Damages:** An award of monetary damages to Plaintiff, including:

    a.     Actual damages suffered by Plaintiff as a result of Defendants' actions, in an amount to be determined at trial, based on the harm caused by consumer confusion and loss of business opportunities.

b.      Punitive damages to deter Defendants from engaging in similar misconduct in the future, justified by the evidence of coordinated efforts to mislead consumers.

62.     **Disgorgement of Profits:** An order requiring all Defendants to account for and disgorge any profits obtained through the unauthorized use of Plaintiff's trademarks and deceptive practices.

63.     **Attorneys' Fees and Costs:** An award of Plaintiff's reasonable attorneys' fees and costs incurred in bringing this action, pursuant to applicable law, supported by the complexity and scope of the litigation.

64.     **Prejudgment and Postjudgment Interest:** An award of prejudgment and postjudgment interest on all monetary awards, at the maximum rate allowed by law, to compensate for the time value of money lost due to Defendants' actions.

65.     **Further Relief:** Any other relief that the Court deems just and proper, considering the ongoing harm and potential future misconduct by Defendants. Plaintiff reserves the right to amend this prayer for relief as further evidence is presented and additional facts are uncovered during the course of litigation.

**DEMAND FOR TRIAL BY JURY**

66.     Plaintiff demands trial by jury for all issues so triable as a matter of law.

Dated: May 12, 2025

Respectfully submitted,

**/s/ Ama N. Appiah**

Ana Juneja

**Ana Law LLC**
1300 Pennsylvania Ave NW Suite 700
Washington, DC 20004
(202) 266-7100
docket@analaw.com

Ama N. Appiah
**Law Office of Ama N. Appiah, P.A.**
721 1st Ave N, Ste 202
St Petersburg, FL 33701-3603
(727) 471-3538
ama.appiah.2003@gmail.com

*Attorneys for Plaintiff Duro Beam, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and complete copy of the foregoing Amended Complaint has been served to all Defendants, through their respective counsels, on May 12, 2025, via their on-record electronic email.

Respectfully submitted,

**/s/ Ama N. Appiah**

Ana Juneja
**Ana Law LLC**
1300 Pennsylvania Ave NW Suite 700
Washington, DC 20004
(202) 266-7100
docket@analaw.com

Ama N. Appiah
**Law Office of Ama N. Appiah, P.A.**
721 1st Ave N, Ste 202
St Petersburg, FL 33701-3603
(727) 471-3538
ama.appiah.2003@gmail.com

***Attorneys for Plaintiff Duro Beam, LLC***

# EXHIBIT A

INTERNET ARCHIVE
WaybackMachine
https://www.metalbuildings.org/quonset-hut/durospan/          Go
12 captures
12 Aug 2020 – 11 Dec 2023
FEB  JUN  DEC
10
2022  2023  2024   About this capture

MB METAL BUILDINGS

Prices   Manufacturers   FAQ   Commercial   Residential   Portable & Modular   Quonset Huts   Plans   Custom Quote      Quotes

QUONSET HUTS

# DuroSpan Quonset Kits by Duro Steel Buildings



Duro Steel Buildings is a family-owned company that designs and manufactures affordable, quality steel building systems. Duro has been a leading steel provider for more than two decades, and the company is trusted by industry leaders, like Disney, SpaceX, John Deere, Carnival Cruise Lines and Harley-Davidson.

The company's line of DuroSpan kits make affordable steel buildings accessible and affordable.

## Why Choose Duro Steel Buildings For Your Arch Building Kit?



A variety of building kits are available through DuroSpan. Arch style buildings are made of AZ60/AZ180 Super Galvalume Plus coated steel, an alloy consisting of aluminum, zinc and silicone. Duro uses 14- to 22-gauge steel for their buildings.

Duro Span buildings are truly customizable, offering any width up to 100' and virtually any length. A variety of endwall options are available, and the company also offers endwall adapters. You have the option of installing side entrances, including sliding doors, service doors and overhead doors. You can install Duro doors, or you can install your own frame for a custom door.

Each building is designed to your local building codes, and the Duro Span can even provide stamped engineered drawings.

### #1 – Energy Efficient

Duro Span buildings have a trussless, clear span design that can accommodate any type of conventional insulation, including fiberglass rolls, spray on or rigid foam. Duct installation for HVAC systems is also very easy.

The high aluminum content of the Galvalume coating helps keep the interior of the building cooler in the summer and warmer in the winter.

## #2 – Simple Foundation Requirements

Duro Span buildings have pre-drilled foundation connectors that are easy to lay and provide long-lasting, accurate and strong construction.

## #3 – Ventilation Systems

Buildings from Duro Span provide unobstructed airflow and have one of two types of ventilation systems:

- Turbine
- Gravity

You also have the option of installing a custom ventilation system.

## #4 – Easily Expandable

Because the buildings use panels that are fastened together with a single-size nut and bolt system, it's easy to extend the length of your building. Just add more arches to expand your space.

## #5 – Quick Delivery and Installation Assistance

Most buildings are shipped out in just 3-4 weeks after placing an order. Duro Span offers installation services virtually anywhere.

Most customers erect their own buildings, and construction only requires the help of four people. All of their buildings can be erected without heavy machinery, making them ideal for placement in remote locations.

Plus, all buildings can easily be disassembled and moved to a new location, so they're ideal for use as temporary structures. Once the building is assembled, you can add walls, partitions or do virtually anything else you please with the interior.

## #6 – Extensive Warranties

Duro Span buildings are backed by two warranties:

- 30-year warranty against corrosion on the steel panels
- 12-month warranty against manufacturing defects

## Types of DuroSpan Buildings

Duro Span offers a variety of steel arch buildings and Quonset hut kits. Their building categories include:

## S-Series

- Widths of 16′ to 60′
- Virtually unlimited lengths
- Straight-sided buildings
- Multiple radius
- Clear span, arched design

## Q-Series

- Widths of 19' to 100'
- Virtually any height and length
- Trussless, clear span construction
- Single-radius
- Steep sidewall clearances

## A-Series

- Widths of 20' to 50'
- Varying center heights and virtually any length
- Cathedral-style peaked roof w/4:12 pitch

## M-Series

- Mini steel buildings
- Widths of 10' to 20'
- Clear span design
- Straight sides
- 18" (w) x 4" (d) pre-punched panels

## G-Series

- Widths of 16' to 40'
- Varying center heights
- Virtually unlimited lengths
- Variety of sidewall clearance heights
- Ideal for garages, workshops, mechanics, offices, recreational storage and retail

All of the buildings from Duro Span are extremely durable, easy to erect and can be used for a variety of purposes, including:

- *Residential*
- *Workshops*
- *Garages*
- *Retail space*
- *Agricultural use*
- *Recreational vehicle storage*
- *Grain storage*
- *Aviation*
- *Offices*
- *Auto mechanic services*

The steel buildings from Duro Span provide superior protection against:

- Snow
- Rain
- Wind
- Hail
- Earthquakes
- Fire
- Extreme temperature fluctuations
- Theft
- Rodents

On top of all of these benefits, Duro Span buildings are virtually maintenance-free. They're also backed by a 30-year warranty against corrosion.

## Duro Buildings for Sale on eBay

Where can you buy your Duro Span kit? **EBay!**

Duro Steel Buildings has been in business for decades, and the company has 100% positive feedback on their eBay store.

Plus, you enjoy steep discounts when you order through the eBay marketplace.

> The company has more than 1,600 reviews on eBay, and not a single one is negative or even neutral – they are *all* positive.

Plus, Duro Steel has metal buildings of different sizes ready for purchase right now. The building prices on eBay are extremely affordable considering the high quality of the buildings. There's no need to wait for a quote, and you can see more detailed photos of each building listed.

Whether you're looking for a new workshop, a building for your agricultural operations or something in between, Duro Span has a building kit that will meet your needs and budget.

  

Get Your Estimate ☑

← PREVIOUS
RV Garage Plans

NEXT →
Is Steel Stronger than Concrete?

METAL BUILDINGS

We are here to help you build your next project.  Contact us with any questions or suggestions to help us improve the site.

Call Now +1-855-202-1240

## Company Info

> About
> Pricing
> Terms Of Use

> Privacy Policy
> Contact
> Cookie





© 2023 ALL RIGHTS RESERVED

**METAL-BUILDING-HOMES**.com

HOME  FLOOR PLANS  BARNDOMINIUMS ˅  POLE BARNS ˅  PREFAB HOMES  CONTAINER HOMES  CONSTRUCTION GUIDES  INSPO PROJECTS  BUILDERS  **BEGINNERS GUIDE (EBOOK)**  GET QUOTES!  CART  CONTACT

Home › Builders › Duro Steel Buildings › All You Need t...

BUILDERS



## Duro Steel Buildings – All You Need to Know Before Choosing (Testimonials Included)

by **Metal-Building-Homes.com**
updated March 15, 2024, 3:30 pm


**2** shares

Duro Steel Buildings is known for producing and using only superior steel in all its structures. It's the go-to for sturdy metal buildings at competitive prices.

Choosing the type of structure by yourself can be quite a daunting task. However, choosing the right partner to work with you to achieve the best building is just as important. Things like sturdiness, design, and price will most likely be the first things you will be considering. With all these in mind, Duro Steel Buildings will certainly satisfy all these and here's why.

When you choose to work with Duro Steel Buildings, you can expect to have metal buildings that are strong enough to stand the test of time. They are not afraid to continually improve and innovate their designs to give their customers cutting-edge metal buildings at a competitive price.

### Our Latest Videos



Metal Building Homes V2

3,000 SQ.FT. | 1 STORY | 4-6 CAR

### TRENDING HOMES


👁 83.8k Views

**1260 Sq. Ft. Economical Rancher Home w/ Front Porch (HQ Plans & Pictures)**


👁 19.7k Views

**Full Metal Building Home with Epic Pool & Stable (10 HQ pictures)**


👁 49.8k Views

**Best 2 Bedroom Cabin for a Couple or Young Family! (HQ Plans)**


👁 19.7k Views

**Country Barn Home Kit w/ Open Porch (9 Pictures)**

Table of Contents [show]

ⓘ ✕

PEB Farmhouse Shed By Tata

PEB Factory Shed Construction

Premium PEB Steel Structure by EZYBUILD™. Trusted Quality. Long Lasting Build. Best Design

tatabluescopesteel.com          OPEN

tatabluescopesteel.com          OPEN



*image via Durobuildings.com*

### Why Should You Choose Duro Steel Buildings?

There are many steel companies that produce and manufacture steel buildings out there. So, why should you choose Duro Steel Buildings? Here are some of the reasons why:

#### A Customer-Centered Company

To this day, the company is still a family-owned business that produces pre-engineered metal structures for both commercial and residential use. You can be assured that from the start of the project to the end, you will have a Duro Steel Building staff with you to help and guide you throughout the construction of your metal building.



*image via durobuildings.com*

The customer's preferences are always followed. Duro Steel Buildings makes sure that every client is satisfied with not only the structure but the service

rendered as well. They strive to meet your specifications using only quality materials.



## Quality is Guaranteed

It may be true that Duro Steel Buildings offer a lower price than most of its competitors, however, this does not mean that they sacrifice the quality of their products. They only use the best materials used to fabricate your steel buildings.





It has even made headlines for the strength of the structures it has produced. It was published by the Royal Gazette that the Duro steel building used to house racing equipment for team USA was unscathed even after experiencing Hurricane Joaquin.





*Image via Durobuildings.com*





Duro Steel Buildings utilize the latest breakthroughs in engineering and technology to produce the best metal buildings.

## What Services and Products Does Duro Buildings Offer?

Duro Steel Buildings offer pre-fabricated and pre-engineered steel buildings for agricultural, aviation, retail, mini-storage, and commercial uses. You can visit their website to check out their designs. They have been in the industry for so long that they have become one of the most trusted names. They also make sure to take their time to understand your needs to construct a steel building that will meet your needs. Additionally, this company also wants its clients to be hassle-free by offering a delivery service that's on-time with all your purchases damage-free.





image via Durobuildings.com

At Duro Steel Buildings, you will have access to an array of options for accessories and more for your steel buildings. You can purchase everything you need for your steel building. It is a one-stop-shop. Furthermore, choosing to purchase from them would ensure that every component will be compatible with your new steel building. Another thing to consider is that they constantly have specials for those who purchase through the shop or online. So be sure to look out for that.

## How Much Does It Cost to Have a Duro Steel Building?

There is no ballpark price for a structure from Duro Steel Building. However, you can still get a free quote on their website. If you want to purchase a metal building from Duro steel, you would need to prepare at least $5,000 dollars.





A Duro Steel Building Backyard storage kit that is **30 x 20 x 14 square feet** is around **$3,800.** Delivery would cost you more than a thousand dollars depending on the location. Because of the number of options and accessories

available, the total price of metal building can greatly vary. You don't have to worry, though, because you will only have to wait between 24 to 48 hours to hear from the company's representative.

They do offer more than just storage kits, but these are the easiest to price. If you want something custom-tailored i.e. agricultural building with living quarters, your best bet is to contact the company, since these types of projects vary in price wildly.

## What is the Disadvantage of Choosing the Duro Steel Building?

The components you purchase from other sources might not always fit. Duro Steel Building is known for constantly updating and innovating their design concepts to give you the best. Because of this, some parts and components bought outside might not always seamlessly fit your metal building. Fortunately, you can purchase accessories and components in-house. It's only one of the many perks of being a Duro Steel Building customer.





*Image via Durobuildings.com*

## Client Testimonials



Energy efficiency is one of the advantages of choosing a Duro Steel Building. **According to one satisfied client**, their electric bill was about a hundred dollars during the peak of summer and averaged only sixty dollars a month after that. **They have also experienced several storms, but their steel building from Duro Steel has become their fortress that is also extremely energy efficient.**



**Another testament** to the sturdiness of a steel building from this company is when Hurricane Wilma struck North Fort Myers. The owner's house sustained damages that totaled about forty thousand dollars. **Meanwhile, their Duro metal building was completely and unscathed and did not even require minor repairs.**

## Frequently Asked Questions (FAQs)

### Q: Can Duro Steel Buildings send you a quote of your building without speaking with them over the phone?

A: You will not have to worry about getting marketing pitches over the phones since Duro Steel Buildings does not use telemarketing devices.  With that said, the professionals and experts from the company would much prefer to speak



you would like to have on your building. Doing this will give you a more accurate quote of your steel building. If you find it too much of a hassle, you can still opt to contact them through email. You should get a reply within a day or two.



### Q: Do you need a permit for your steel building?

A: The answer to this might vary since there are different building codes in each area. The best answer to this would be your area's building department. However, a building permit is usually needed. Take note that Duro Steel Buildings will not be able to give you a building permit, though they can give you the technical building plans with a stamp from an in-house engineer for you to acquire the permit.

### Q: What types of I-Beam Steel Buildings does Duro have?

A: Duro Steel Buildings have custom-made I-Beam Buildings  they also have designs for :



- Single Slopes Buildings
- Aircraft Hangars
- Cantilevered Buildings
- Lean-to Buildings
- Gambrel Buildings
- Monitor Style Buildings
- Storage Kits

### Q: What kind of metal buildings does Duro fabricate?

A: Duro sells pre-engineered metal buildings for residential, commercial, industrial, and retail. They also have Red Iron Steel Frame structures available.

### Final Thoughts

Truly, Duro Steel Buildings is your best choice for strong metal buildings with innovative and energy-efficient designs. They make sure to include all your needs in the structure they are fabricating for you. They also make it a point to have professional staff with you from the construction process to the end of your project. Plus, one more thing that's great about working with them is that they have everything your buildings needs in-house. It is no wonder that they are the first choice when purchasing a metal building.



  

**2**
Shares

**Written by Metal-Building-Homes.com**

We strive to deliver informational and inspirational content for unconventional homes. From barndominiums to steel-framed modular homes, this is the place to browse if you're looking into untraditional housing options.

Prices for Duro Steel Buildings are among the cheapest in the industry as the company strives to maintain the operating costs associated with pre-engineered steel buildings, from configuring to final delivery. Thanks to its sophisticated computer-aided manufacturing equipment, less labor is required to make their unique designs possible.



## What are the advantages of using Duro Steel Buildings over the conventional construction methods?





# EXHIBIT B

| | |
|---|---|
| **From:** | kulslaw@aol.com |
| **Sent:** | 22 May 2024 18:12 |
| **To:** | Nicole Shore |
| **Subject:** | Fw: Arnold Home Project / SteelMaster Buildings / Nick E |

----- Forwarded Message -----
**From:** Nick Ewing <newing@steelmasterusa.com>
**To:** kulslaw@aol.com <kulslaw@aol.com>
**Cc:** Elliott Fowler <efowler@steelmasterusa.com>
**Sent:** Tuesday, May 21, 2024 at 01:15:30 PM EDT
**Subject:** Arnold Home Project / SteelMaster Buildings / Nick E

Hi Nicole,

I am with SteelMaster Buildings. Not Duro Span. We are based out of Virginia Beach VA and have been in business for over 42 years. We are factory direct and ship to any location across the united states. Our warranty, product and workmanship are unmatched. The models you may have saw on our website is typically 22-gauge steel.

Building projects for living quarters, whether a home or cabin, are a bit more complex and require more information for us to best assist you. So that we can get you paired up with a Home Certified Building Specialist to best handle your application, please fill out this brief survey about your project and then a Home Specialist will be in touch to discuss further, answer your questions and get you pricing.

Click here >>> [House Survey (wufoo.com)](House Survey (wufoo.com))

Let me know if you have any additional questions. I am happy to help. Thank you!

Nick Ewing

National Sales Representative

SteelMaster® Buildings



SteelMaster Buildings, LLC

1

1023 Laskin Road, Ste 109

Virginia Beach, VA 23451


Phone: (800) 341-7007 Ext: 8119

E-mail: newing@SteelMasterUSA.com


 www.SteelMasterUSA.com

---

**From:** kulslaw@aol.com <kulslaw@aol.com>
**Sent:** Tuesday, May 21, 2024 12:08 PM
**To:** Nick Ewing <newing@steelmasterusa.com>
**Subject:** Re: Arnold Garage Project / SteelMaster Buildings / Nick E


Hello Nick -


Sorry I missed your call. I am at work and I'm not able to be on the phone, but I can email or text. I was looking for a Duro Span building.  I saw it on the website do you still have this one. I believe it was a Q 30x40 to use as a house on land that I just purchased in Lakeland, FL. I think they call them Quonset homes.


Do you install these as well? If not, could you provide me with a contractor to erect the steel?


I look forward to hearing back.

Nicole Arnold




On Tuesday, May 21, 2024 at 11:54:40 AM EDT, Nick Ewing <newing@steelmasterusa.com> wrote:


 Hi Nicole,

It looks like you inquired about our sale buildings and are looking for a 30-16x50 garage building. If you are flexible on size, I have a 30' W – 16H x 44' L on clearance for under $20,000… normal price is over $34,000. We do have other options available as well.

Also, if you are flexible with us on delivery, there are a couple trucks heading your way in the next 30-90 days that are already paid for. I can see if this building will fit on one of the trucks, so I can offer you FREE shipping and save you the $1,800 in freight costs.

If you can take advantage of this, please call me ASAP… We'd need a deposit to hold the building and possibly get you the free shipping. The balance will be due upon delivery.

Look forward to earning your business.

Regards,

Nick Ewing

National Sales Representative

SteelMaster® Buildings



SteelMaster Buildings, LLC

1023 Laskin Road, Ste 109

Virginia Beach, VA 23451

Phone: (800) 341-7007 Ext: 8119

E-mail: newing@SteelMasterUSA.com

www.SteelMasterUSA.com

# EXHIBIT C

| | |
|---|---|
| **From:** | Bruce Shore <bruce@durobuildings.com> |
| **Sent:** | 01 May 2024 18:48 |
| **To:** | jared@newmaninjurylaw.com |
| **Cc:** | Nicole Shore |
| **Subject:** | FW: Confidentiality -- please reply |
| **Attachments:** | Attachment 2 to Settlement Agreement - Lead Generation Agreement draft Duro and Aff2 4-30-2024.docx; Settlement draft 4-30-2024 Duro Aff1 Aff2 360C.docx |

**From:** Jean Warshaw <jean@warshawlegal.com>
**Sent:** Tuesday, April 30, 2024 5:27 PM
**To:** Bruce Shore <bruce@durobuildings.com>
**Subject:** Re: Confidentiality -- please reply

Bruce --

I need to go to my next engagement, and will try to take your call but may be on the subway.  In the meantime, here are the drafts for your review. Please note that my client has not had a chance to review them thoroughly and the two affiliates have not seen them at all yet, and so the settlement terms may change before they are ready for signature.  I will let you know any changes.

If you have comments please redline them in and return the redlines to me.


Regards,

Jean

Jean Warshaw

401 East 86th Street, #19D
New York, New York 10028
Jean@WarshawLegal.com
O:  212 722 2240
F:  212 774 1999


On Tue, Apr 30, 2024 at 4:17 PM Bruce Shore <bruce@durobuildings.com> wrote:

> I will call you about 5:30
>
> Thanks,
>
> Bruce

**From:** Jean Warshaw <jean@warshawlegal.com>
**Sent:** Tuesday, April 30, 2024 4:12 PM
**To:** Bruce Shore <bruce@durobuildings.com>
**Subject:** Re: Confidentiality -- please reply

Bruce --

Thank you for your reply.

I have a draft settlement agreement just about ready to send you.  Given your comment I will send a version that just says Affiliate 1 and Affiliate 2 without identifying them by name, and then if you are satisfied that you are getting what you need we can discuss an agreement not to sue them or publicize their websites so long as we are negotiating in good faith.  I think that should work.

I think you will be reassured once you read the draft that we are providing what we said we would.  Bruce, my draft says that you will receive $30k but I am not breaking it down among the affiliates and 360Connect.  I hope that meets your needs. Also, as I explained, the affiliate can't guarantee any number of leads because they will not be using your trademarks or copyrighted materials to generate those leads.  You will get 100% of the leads that come in, and an opportunity to review the site.   And you can negotiate directly with the affiliate, which I will call Affiliate 2.

I am at a client's office and not really free to talk, but if you call me I will find a quiet spot where I can speak with you.

Regards,

Jean

Jean Warshaw

401 East 86th Street, #19D

New York, New York 10028

Jean@WarshawLegal.com

2

O:  212 722 2240

F:  212 774 1999

On Tue, Apr 30, 2024 at 12:36 PM Bruce Shore <bruce@durobuildings.com> wrote:

**Hello Jean,**

**Agreed, Contingent on metalbuildings.org, , paying l$10,000.00, metal-buildings.org, paying l$10,000.00, & Jeff DBA-(360Connect), paying $10,000.00.**

**Also Contingent on not using any Duro Intellectual Rights property including name and pictures, etc**

**The above agree to provide Dedicated leads for 1 year.**

**Leads need to go to Duro Only and we expect a reasonable count.**

**Once Again, I'm eager & anxious to get this over with. .**

**Thank you for all your Time,**

*Bruce D. Shore*

Local: 954.927.6566 x301

Toll Free 1.800.445.0412

Fax: 1.855.294.9990



**THE HOME OF ALL THINGS DURO**



3

To View additional Building Styles and Doors please click on the websites listed below.

.

Duro Buldings ™ www.durobuildings.com

Duro Span ™ www.durospan.net

Duro Storage ™ www.durostorage.com

Duro Beam ™ www.ibeambuildings.net

Duro Doors ™ www.durodoors.com

*"To give real service you must add something which cannot be bought or measured with money, and that is sincerity and integrity."*

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) or entity to which it is addressed and may contain confidential or proprietary information. Any unauthorized review, retransmission, dissemination, disclosure, distribution or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail, delete the material from any computer and destroy all copies of the original message.

---

**From:** Jean Warshaw <jean@warshawlegal.com>
**Sent:** Monday, April 29, 2024 10:55 PM
**To:** Bruce Shore <bruce@durobuildings.com>
**Subject:** Re: Confidentiality -- please reply

Bruce --

I just finished drafting and sent a proposed agreement for 360Connect's review.  I am going to be a bit fussy and ask that before I send the agreement to you with the affiliate's names that you agree more specifically to the concept we outlined last week:

As we discussed, this will confirm our agreement that once I provide you the names of the affiliates who operated the metalbuildings.org and metal-buildings.org and related websites you will not sue them or

contact anyone else including other building companies and alert them to the affiliates' websites so long as we are negotiating in good faith.  Please respond to this email to let me know that you agree.

If you would please reply back to me with simply "Agreed" I will send you the draft as soon as Jeff has had an opportunity to have a look.

Unfortunately, I am tied up almost all of tomorrow, but will do my best to respond to emails as I can get to my computer.

Jean

Jean Warshaw

401 East 86th Street, #19D

New York, New York 10028

Jean@WarshawLegal.com

O:  212 722 2240

F:  212 774 1999

On Mon, Apr 29, 2024 at 6:21 PM Bruce Shore <bruce@durobuildings.com> wrote:

Jean,

Yes, it is. All our names are registered and have a trademark. The Steel Buildings are under Duro Beam LLC

Bruce

**From:** Jean Warshaw <jean@warshawlegal.com>
**Sent:** Monday, April 29, 2024 5:57 PM

**To:** Bruce Shore <bruce@durobuildings.com>
**Subject:** Re: Confidentiality -- please reply

Bruce --

I have been working on and off all afternoon and not 100% done, so tomorrow am sounds reasonable to me.  One question from you will help though -- I see you have a few corporations but is Duro Beam LLC the only one in the steel building business?

Regards,

Jean

Jean Warshaw

401 East 86th Street, #19D

New York, New York 10028

Jean@WarshawLegal.com

O:  212 722 2240

F:  212 774 1999

On Mon, Apr 29, 2024 at 5:49 PM Bruce Shore <bruce@durobuildings.com> wrote:

Hello Jean,

Just a simple question. When can I expect your Paperwork?

I'm anxious to get this over.

Thank you,

*Bruce D. Shore*

Local: 954.927.6566 x301

Toll Free 1.800.445.0412

Fax: 1.855.294.9990



**THE HOME OF ALL THINGS DURO**



To View additional Building Styles and Doors please click on the websites listed below.

.

Duro Buldings ™ [www.durobuildings.com](http://www.durobuildings.com)

Duro Span ™ [www.durospan.net](http://www.durospan.net)

Duro Storage ™ [www.durostorage.com](http://www.durostorage.com)

Duro Beam ™ [www.ibeambuildings.net](http://www.ibeambuildings.net)

Duro Doors ™ [www.durodoors.com](http://www.durodoors.com)

*"To give real service you must add something which cannot be bought or measured with money, and that is sincerity and integrity."*

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) or entity to which it is addressed and may contain confidential or proprietary information. Any

unauthorized review, retransmission, dissemination, disclosure, distribution or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you are not the intended recipient, immediately contact the sender by reply e-mail, delete the material from any computer and destroy all copies of the original message.

---

**From:** Bruce Shore
**Sent:** Friday, April 26, 2024 6:12 PM
**To:** Jean Warshaw <jean@warshawlegal.com>
**Subject:** RE: Confidentiality -- please reply

Send leads to sales@durobuildings.com

I agree to the proposed settlement

Thank You,

Bruce

---

**From:** Jean Warshaw <jean@warshawlegal.com>
**Sent:** Friday, April 26, 2024 5:19 PM
**To:** Bruce Shore <bruce@durobuildings.com>
**Subject:** Confidentiality -- please reply

Bruce --

Thank you for our discussion today.  Jeff agreed that I can attach to the draft settlement agreement a template agreement for delivery of leads, although I am not representing either you or the affiliates by providing that.  Please let me know what email address you want the leads sent to.

As we discussed, this will confirm our agreement that once I provide you the names of the affiliates who operated the metalbuildings.org and metal-buildings.org and related websites you will not sue them or contact anyone else including other building companies and alert them to the affiliates' websites so long as we are negotiating in good faith.  Please respond to this email to let me know that you agree.

I plan on finishing up a draft agreement and getting it to you Monday because we share your objective of getting this done next week.

Have a great weekend.

Regards,

Jean

Jean Warshaw

401 East 86th Street, #19D

New York, New York 10028

Jean@WarshawLegal.com

O:  212 722 2240

F:  212 774 1999

# EXHIBIT D

## Settlement Agreement and Release of Claims

This Settlement Agreement and Release of Claims (the "Agreement") is made between Duro Beam, LLC (Duro), 360Connect, LLC (360Connect),  Affiliate1 (Affiliate1), and Affiliate2 (Affiliate2), each at the respective addresses set forth below.  This Agreement is effective as of the date that all of the following have occurred: (i)  it is signed by the last Party to sign it, as indicated by the date next to such Party's signature; (ii) all releases in Attachment 1 have been fully executed, notarized, and received by the Parties, and (iii) the Settlement Payment has been received by Duro ("Effective Date").

WHEREAS, Duro sells steel buildings and generates leads for itself for such sales, and the other Parties generate leads for sellers of products and services including steel buildings;

WHEREAS, Duro has asserted unauthorized use of its trademarks and copyrighted text and images by the other Parties in their lead generating activities on the internet, which the other Parties dispute, (the Assertion) and all Parties have agreed to settle the Assertion by executing this mutual Settlement Agreement and Release;

WHEREAS, the Parties recognize that by the execution of this mutual Settlement Agreement and Release, they are relinquishing their respective legal rights with respect to past lead generation practices.

THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereto agree as follows:

1. **Consideration.** In consideration for Duro's entry into this Agreement and fulfilling the terms hereof, 360Connect, Affiliate1, and Affiliate2 shall collectively pay Duro the total amount of Thirty Thousand Dollars ($30,000.00) to be received by Duro within ten business days of the full execution of this Agreement and delivery of executed releases in the form attached as Exhibit 1.  Duro agrees it shall not seek anything further, directly or indirectly, for itself or any person or entity, with respect to the Assertion on account of activities prior to the Effective Date.  Duro shall be solely responsible for any and all taxes that may be owed to any federal, state, or local taxing authority as a result of the settlement payment received under this Agreement.

2. **Escrow.**  Affiliate1, Affiliate2, and 360Connect, within 24 hours of that party's execution of this Agreement, shall send by overnight courier checks totaling the settlement amount made payable to "Jean Warshaw as Attorney" to Jean Warshaw, Esq., 401 East 86th Street, Apt. 19D, New York, New York 10028 for deposit in her New York attorney escrow account.  Upon receipt of (i) four original executed copies of this Settlement Agreement and Release of Claims with all contact information filled in from each Party to this Settlement Agreement and Release of Claims, (ii) four original executed and notarized Releases as set forth in Attachment 1 from each Party, and (iii) written confirmation from both Duro and Affiliate2 that they have executed an agreement as described in Section 7 below, or have determined not to enter into such an agreement, (collectively the Required Documents) Warshaw shall send a check in the amount of the settlement amount made payable to "Duro Beam, Inc." to Bruce D. Shore at the address provided below for Duro. In the event that the Required Documents are not received by Warshaw by May 15, 2024 she shall destroy all executed releases and return all settlement

payments received from Affiliate1, Affiliate2, and 360Connect, and this Settlement Agreement and Release of Claims and all executed releases shall be of no further force or effect.

3. **Release.** Each Party shall execute the release prepared for execution by that Party as annexed hereto in Exhibit 1.  Each Party represents and warrants that it has not filed any action or initiated any other proceeding with any court or government authority against or involving any other Party.  Each Party shall execute four original Releases and send them by overnight courier to Jean Warshaw at the address set forth above.  Warshaw shall hold the releases in escrow pending receipt of all Required Documents as set forth in Section 2 above, and shall distribute or destroy such releases as set forth in Section 2 above.

4. **Effect.** The attached releases are intended to be general releases in the broadest form. It is understood and agreed that the Parties hereby expressly waive any and all laws and statutes, of all jurisdictions whatsoever, which may provide that a general release does not extend to claims not known or suspected to exist at the time of executing a release which if known would have materially affected the decision to give said release. It is expressly intended and agreed that the releases do extend to such unknown and unsuspected claims related to anything which has happened up to an including the Effective Date hereof which is covered by the releases, even if knowledge thereof would have materially affected the decision to give the release. In addition, the Parties warrant and represent to the other Parties that the execution and delivery of the releases do not, and with the passage of time will not, violate any obligation of the Party to any third party. Each Party further represents and warrants that it has not assigned any of its rights with respect to the other Parties or the Assertion to any other person or entity.

5. **No Admission.** The Parties expressly agree and acknowledge that this Agreement represents the settlement and compromise of disputed claims, and that by entering into this Agreement neither 360Connect, Affiliate1, or Affiliate2 admits or acknowledges the existence of any liability, obligation, or wrongdoing on its part. Each Party expressly denies any and all liability with respect to the Assertion.

6. **No Use of Duro Trademarks or Copyrights.**  360Connect, Affiliate1, and Affiliate2 agree not to display Duro's trademarks or copyrighted images or text (Duro Materials) on any websites owned or operated by them.  In the event that Duro has a good faith reason to believe that a website owned or operated by 360Connect, Affiliate1, or Affiliate2 is displaying Duro Materials, Duro shall contact the Party who owns or operates such website and specify the allegedly infringing materials, including by providing images of (i) the Duro Materials involved, (ii) the Duro Materials on such websites,  and (iii) proof of Duro's ownership of such Duro Materials. Within one business day of receiving Duro's written notice, the recipient shall remove all Duro Materials identified by Duro from its website.  In the case of notice received by 360Connect, 360Connect will notify any affiliate identified by Duro that is displaying Duro Materials, and will cease receiving leads from such affiliate until the affiliate has removed all Duro Materials.  In the event that the notified Party disputes allegations made by Duro, Duro and that Party shall attempt to resolve such dispute in good faith. Each Party waives and releases the other Parties from any and all claims and damages for use of Duro Materials and notifications under this Section 6, provided the other Party complies with the procedures in this Section .

7. **Provision of Leads to Duro**.  Duro and Affiliate2 shall enter into an agreement whereby Affiliate2 shall provide steel building leads to Duro for one year without charge. Affiliate2 shall establish an internet site to be dedicated to generating leads for Duro products.  Such internet site may not display Duro Materials.  A form of agreement is provided in Attachment 2;  the parties agree that they are not relying on the form of agreement and have not received legal

advice from 360Connect or its counsel Jean Warshaw as to the interpretation of or advisability of entering into Attachment 2.  Duro and Affiliate2 may enter into any agreement that they may negotiate between them.

8. **Independent Legal Counsel.** The Parties acknowledge that they have had the opportunity to consult with independent legal counsel regarding the legal effect of this Agreement and the Release and that each Party enters into this Agreement freely and voluntarily. Affiliate1, Affiliate2, and Duro acknowledge and agree that none of them have received legal advice from 360Connect or its counsel Jean Warshaw.

9. **No Disparagement**. The Parties specifically agree not to make, directly or indirectly, any negative or disparaging reviews, comments, remarks or any other statements to any person or in any form whatsoever regarding or relating to the other Parties, as well with respect to as the products and services of the other Parties, including, but not limited to, making any negative comments or any critiques on any online forums or websites.  Duro agrees it will not assert or suggest, directly or indirectly, to any other person or entity or other provider of goods or services that it may have a claim against 360Connect, Affiliate1, or Affiliate2.

10. **Confidentiality**. The Parties and their respective counsel represent and agree to keep confidential all the facts and allegations relating to the Assertion, the content formerly on metalbuildings.org, content formerly on metal-buildings.org, the terms and conditions of this Agreement, as well as all negotiations and discussions leading up to this Agreement (the Confidential Information). The Parties agree to not disclose the Confidential Information to other person except as compelled by applicable law or to those individuals who have a need to know the contents of this Agreement, such as financial and tax advisors, legal counsel, and other retained professional representatives of the Parties, and such disclosures shall only be made if such persons are informed of and agree to be bound by this confidentiality obligation. Neither Party shall make, directly or indirectly, any statement or issue any press release of any kind regarding Confidential Information or the contents of this Agreement without the prior written consent of all the other Parties.

11. **Who is Bound.** Each Party is bound by this Agreement. Any person or corporation, partnership or other entity which succeeds to a Party's rights and responsibilities is also bound. This Agreement is made for the benefit of the Parties, their past, present and future officers, directors, shareholders, employees, attorneys, and agents, and the Parties' affiliates and subsidiaries, and all who succeed to their rights and responsibilities, as well as any successors and assigns of the Parties. Duro and the individual signing on behalf of Duro represent and warrant that all individuals and business entities affiliated with Duro or its officers and shareholders that may have any claims related to the Assertion (Duro Related Parties) have been disclosed and are parties to this Agreement, and that they will defend, indemnify and hold harmless Affiliate1, Affiliate2, and 360Connect from and against all claims by Duro Related Parties related to the Assertion.

12. **Governing Law; Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Texas notwithstanding its choice of law provisions. The Parties agree that any claims or legal actions by one Party against the other to enforce the terms of this Agreement or concerning any rights under this Agreement shall be commenced and maintained in any state court located in the State of Texas, County of Travis, and each party agrees to personal jurisdiction in such courts.

13. **Fees and Expenses.** Each Party hereto shall bear its own fees and expenses (including attorneys' fees) incurred in connection with the Assertion, this Agreement and the consummation of the transactions contemplated hereby.

14. **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original, but all of which together will constitute one and the same instrument, without necessity of production of the others.

15. **Waiver.** No waiver of any term or right in this Agreement shall be effective unless in writing, signed by an authorized representative of the waiving Party. The failure of any Party to enforce any provision of this Agreement shall not be construed as a waiver or modification of such provision, or impairment of its right to enforce such provision or any other provision of this Agreement thereafter.

16. **Construction.** The headings/captions appearing in this Agreement have been inserted for the purposes of convenience and ready reference, and do not purport to and shall not be deemed to define, limit or extend the scope or intent of the provisions to which they appertain. This Agreement shall not be construed more strongly against either Party regardless of which Party is more responsible for its preparation.

17. **Entire Agreement.** This Agreement sets forth the entire and complete understanding and agreement between the Parties regarding the subject matter hereof including, but not limited to the settlement of all disputes and claims with respect to the Assertion, and supersedes any and all other prior agreements or discussions, whether oral, written, electronic or otherwise, relating to the subject matter hereunder. Any additions or modifications to this Agreement must be made in writing and signed by authorized representatives of all affected Parties. The Parties acknowledge and agree that they are not relying upon any representations or statements made by the other Party or the other Party's employees, agents, representatives or attorneys regarding this Agreement, except to the extent such representations are expressly set forth herein.

18. **Authority to Bind.** By signing below the Parties represent that the signatories are authorized to execute this Agreement on behalf of themselves and/or their respective business entities and that the execution and delivery of this Agreement are the duly authorized and binding acts of themselves and their respective business entities.

In witness whereof, the Parties hereto have executed this Agreement on the date set forth below.

| Duro Beam, LLC | 360Connect, LLC |
|---|---|
| By: | By: |
| ------------------------------------ | ------------------------------------ |
| Bruce D. Shore, individually and on behalf of Duro Beam, LLC | Jeff Hoogendam |
| Title: | Title:  CEO |
| Address: | Address: |
| Email: | Email: |
| Telephone: | Telephone: |
| Date signed: | Date signed: |

| Affiliate1 | Affiliate2 |
|---|---|
| -------------------------------------- | By:<br><br> -------------------------------------- <br><br>individually and on behalf of Affiliate2 |
| Title: | Title: |
| Address: | Address: |
| Email:<br>Telephone:<br>Date signed: | Email:<br>Telephone:<br>Date signed: |

Jean Warshaw, solely as escrow agent as
provided in Sections 2 and 3 of this Settlement
Agreement and Release

 --------------------------------------

Address:
401 East 86th Street, Apt. 19D
New York, New York 10028

Email:  Jean@WarshawLegal.com
Telephone: 212 722 2240
Date signed:

Attachment 1

*I will purchase and prepare releases from each party to the other three parties, using these standard forms.  The corporate releases will also be from the individual signing on its behalf.  This is the form of a release from a corporation:*

 111 — General Release, by Corporation: 10-05

**Blumberg** Excelsior, Publisher, NYC 10013
www.blumberg.com

# 𝕿𝖔 𝖆𝖑𝖑 𝖙𝖔 𝖜𝖍𝖔𝖒 𝖙𝖍𝖊𝖘𝖊 𝕻𝖗𝖊𝖘𝖊𝖓𝖙𝖘 𝖘𝖍𝖆𝖑𝖑 𝖈𝖔𝖒𝖊 𝖔𝖗 𝖒𝖆𝖞 𝕮𝖔𝖓𝖈𝖊𝖗𝖓, 𝕶𝖓𝖔𝖜 𝕿𝖍𝖆𝖙

A corporation organized under the laws of the State of                                                                as RELEASOR,
in consideration of the sum of

                                                                                                                    (S                              ),

received from

PREVIEW

                                                                                                                    as RELEASEE,

receipt whereof is hereby acknowledged, releases and discharges

the RELEASEE, RELEASEE'S heirs, executors, adminis-
trators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds
bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents,
executions, claims, and demands whatsoever, in law, admiralty or equity, which against the RELEASEE, the RELEASOR,
RELEASOR'S successors and assigns ever had, now have or hereafter can, shall or may have, for, upon, or by reason of any matter,
cause or thing whatsoever from the beginning of the world to the day of the date of this RELEASE.

The words "RELEASOR" and "RELEASEE" include all releasors and all releasees under this RELEASE.

This RELEASE may not be changed orally.

**In Witness Whereof,** the RELEASOR has caused this RELEASE to be executed by its duly authorized officers and its corporate seal to be hereunto affixed on

**In Presence of**

..................................................................................

By ..................................................................................

State of New York, County of _____ ss.:
On _____ before me, the undersigned, personally appeared

ACKNOWLEDGEMENT RPL309-a (Do not use outside New York State)

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

*(signature and office of individual taking acknowledgment)*

*If the party making payment is not the same as the party released, delete words "as RELEASEE" and add names of parties released after the word "discharges."*

---

**ACKNOWLEDGMENT IN NEW YORK STATE**

**State of New York**
**County of** ⎫ ss.:
⎭
On                                    before me, the undersigned,
personally appeared

personally known to me or proved to me on the basis of satis-
factory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me

**ACKNOWLEDGMENT OUTSIDE NEW YORK STATE**

**State of**
**County of** ⎫ ss.:
⎭
On                                    before me, the undersigned,
personally appeared

personally known to me or proved to me on the basis of satis-
factory evidence to be the individual(s) whose name(s) is (are)
subscribed to the within instrument and acknowledged to me

Attachment 2
Form of Lead Generation Agreement for Consideration

# Lead Generation Agreement

This agreement ( "**Lead Generation Agreement**") applies to Duro Beam, LLC's (Duro's) use of the following Affiliate2 (Affiliate2) services: (A) Lead Generation Ads; and (B) Lead Generation Tools and Services, as each are defined in Section 1.1.

These Lead Generations Terms apply to the processing and use of Lead Generation Data in connection with Lead Generation Ads as described above.

## 1   Definitions and interpretation

1.1    In this Lead Generation Agreement, the following terms shall have the following meanings:
"**Lead Generation Ad**" means an advertising unit allowing a user of Affiliate2's Website to provide Lead Generation Data to Duro.
"**Lead Generation Data**" means any information a user voluntarily submits through a Lead Generation Ad.
"**Lead Generation Tools and Services**" means any additional tools and services which Affiliate2 may provide from time to time, to facilitate Duro's use of Lead Generation Data collected through Lead Generation Ads.

## 2   Lead Generation Ads and Lead Generation Data

2.1   Affiliate2 will use its website at _____ (the Website) to generate Lead Generation Data for steel buildings and components to be sent to Duro.   Affiliate2 shall not charge Duro for such leads or creation or maintenance of the Website, or any other fees in connection with this Lead Generation Agreement.  All leads generated using the Website will be provided solely to Duro by Affiliate2.  Affiliate2 will email all Lead Generation Data to sales@durobuildings.com on a daily basis.

2.2  Affiliate2 will create the content of the Website within ten business days of the later of the Effective Date of this Agreement and the Effective Date of the Settlement Agreement and Release of Claims entered into between 360Connect, LLC, Affiliate1, Affiliate2 and Duro.   Duro shall review the Website content and either approve of the content in writing or require changes. Affiliate2 shall not solicit Lead Generation Data from any resident of countries other than the United States and Canada.  Neither Affiliate2 nor the Website will publish Duro's trademarks or copyrighted images or content.  If Duro approves in writing of the content of the Website, Affiliate2 will cause the Website to go live. If Duro disapproves, it and Affiliate2 will work together in good faith to revise the content and go live as soon as reasonably feasible.  Affiliate2 will supply Lead Generation Data to Duro for one year from the go live date.

2.3  Duro will not share Lead Generation Data with any third party.  Duro will not contact leads to sell products or services other than steel buildings and components.  Duro will not use automated telephone dialing systems, texting, or prerecorded messages in contacting leads.

2.4  Consideration for Affiliate2's entry into this Lead Generation Agreement includes the parties' entry into the Settlement Agreement and Release of Claims entered into between Affiliate2 and Duro and other entities not a party to this Lead Generation Agreement.  The parties acknowledge the exchange of good and valuable consideration to support entry into this Lead Generation Agreement.

2.5  Duro will ensure, and is solely responsible for ensuring that, Duro's use of Lead Generation Ads, Lead Generation Data, and Lead Generation Tools and Services complies with this Lead Generation Agreement, and all applicable laws, rules and regulations (including those relating to providing all necessary disclosures to leads and prospective leads). Further Duro is solely responsible for, and will ensure that Duro obtains, any consents necessary to collect, use, and process Lead Generation Data, and use Lead Generation Ads and Lead Generation Tools and Services.

2.6    Duro will ensure that each Lead Generation Ad includes all disclosures and consent or choice mechanisms, including email opt-out and unsubscribe mechanisms, that are necessary to comply with applicable laws, rules and regulations to enable its intended use of the Lead Generation Data.

2.7  Affiliate2 will provide:

(a) a clear and prominent disclosure on the Website that collection and processing of Lead Generation Data will be governed by Affiliate2's privacy policy and that Affiliate2 will be the data controller (or analogous concept, if and as required by applicable law, rules and regulations) of such data; and

(b)  a link to Affiliate2's privacy policy on the Website. Affiliate2 will further ensure that no Lead Generation Ad will be targeted to any individual under the age of 18;

(c)  proof of consent by leads for Duro to telephone or email them using Lead Generation Data. Such proof of consent shall be provided with the Lead Generation Data. Duro shall satisfy itself that adequate consent has been provided prior to contacting leads. Affiliate2 is not under any obligation to retain such proof after it has provided same to Duro.

2.8    Duro must only use the Lead Generation Data in accordance with Duro's and Affiliate2's privacy policy, and any additional terms and conditions agreed to by the lead or prospective lead when agreeing to provide Lead Generation Data to Duro, including, without limitation, where Duro uses Lead Generation Tools and Services to facilitate Duro's use of Lead Generation Data.

2.9    Duro and Affiliate2 will have in place appropriate technical and organizational measures to protect Lead Generation Data against accidental or unlawful destruction, loss, alteration, unauthorized disclosure, or access, and such measures will take into account the nature, scope, context, and purposes of the processing as well as the risks.

2.10  Duro and Affiliate2 agree that there is no minimum or maximum number of leads or amount of Lead Generation Data required to be delivered under this Lead Generation Agreement. Affiliate2 does not verify or guarantee the accuracy of Lead Generation Data.

**3    Compliance with Law**

Each party will comply with (and not violate) any applicable law concerning its actions in generating and using Lead Generation Data.  Applicable laws include but are not limited to Canandian law and the following United States laws, together with applicable implementing regulations and guidances:  the California Consumer Privacy Act ("CCPA"), the Colorado Privacy Act ("CPA"), the Connecticut Data Privacy Act ("CTDPA"), the Utah Consumer Privacy Act ("UCPA"), and the Virginia Consumer Data Protection Act ("VCDPA"), the Telephone Consumer Privacy Act, the CAN-SPAM Act, and all advertising laws including those administered by the Federal Trade Commission and the Federal Communications Commission, and Do Not Call registries.

**4    Modification and Termination**

4.1    Affiliate2 may modify these Lead Generation Terms at any time on written notice to Duro if required to comply with applicable law.

4.2    Duro may discontinue Duro's use of Lead Generation Ads, or any or all of the Lead Generation Tools and Services, at any time.

**5    Monitor Compliance**

Each party reserves the right to monitor the other party's compliance with this Lead Generation Agreement and each party agrees upon request to provide reasonable documentary evidence of its compliance with these Lead Generation Terms.

**6   No Reliance**

The Parties acknowledge that they have had the opportunity to consult with independent legal counsel regarding the legal effect of this Agreement and the Release and that each Party enters into this Agreement freely and voluntarily after having an opportunity to negotiate the terms with the other Party. Affiliate2 and Duro and the signatories on behalf of them each acknowledge and agree that they have not received legal advice from 360Connect or its counsel Jean Warshaw, and each releases and waives all claims against 360Connect, LLC and Jean Warshaw in connection with any business arrangement between Affiliate2 and Duro.

Accepted and Agreed:


Duro Beam, LLC
By:
   ---------------------------------------
   Bruce D. Shore

Title:

Address:


Email:
Telephone:
Date signed:


Affiliate2
By:
   ---------------------------------------


Title:

Address:


Email:
Telephone:
Date signed:

# EXHIBIT E

**Jean Warshaw, Esq.**
401 East 86th Street, #19D
New York, New York 10028
telephone:  (212) 722-2240
fax: (212) 774-1999

By email to [lawyer@analaw.com](mailto:lawyer@analaw.com)

May 8, 2024

Ana Juneja, Esq.
1300 Pennsylvania Ave NW Suite 700
Washington DC 20004

      Re:  Duro Beam, LLC Allegations Against 360Connect, LLC

Dear Ms. Juneja:

      As you know, I represent 360Connect, LLC, (360Connect) which is based in Austin, Texas.  I am writing this letter to provide you and your client with additional information regarding 360Connect and the fact that it is not factually or legally responsible for the claims Duro Beam, LLC. (Duro) is alleging and to establish that if Duro were to file a claim against my client, such claim would be without factual or legal basis.

      As we discussed, my client has no ownership interest in or control of the websites brought to its attention by Mr. Bruce Shore of Duro.  Those websites are metalbuildings.org, metal-buildings.org/duro, and metalbuildings.org/Quonset-hut/durospan.  360Connect's contacts for those websites are William Manning of WEM Global, Inc., and Ian Hart of Ian Hart Design, LLC.

      The two website managers are referred to as affiliates as a term of art, but they are not legally affiliated and are under no common ownership with 360Connect.  They are third party contractors who operate their own websites and post advertisements for 360Connect and other advertisers.   They are not agents of 360Connect and have no other relationship with 360Connect.  In that respect they are publisher websites and 360Connect is an advertiser that gets responses to its ads on the websites.

      360Connect is an advertiser that uses digital marketing as part of its business strategy. The company places such advertisements across a variety of websites that provide content that may be of interest to the types of prospective customers 360Connect would like to reach.  These websites might include, for example, Google, Facebook, Bing, LinkedIn, and other third party websites such as the websites that your client noted.  The relationships between advertisers and websites are non-exclusive, as is the case with my client and the two website managers involved in the actions about which your client is making claims.  360Connect is one of many advertisers on the websites at issue here, including, for example, Angi (formerly Angie's List).

Ana Juneja, Esq.
page 2

In this circumstance, advertisers such as 360Connect and Angi do not control, and are not responsible for, the content of the websites on which they advertise.

As we have informed you previously, 360Connect does not own or have any editorial control over the two website managers, their websites, or any of the other third-party websites or platforms on which it advertises. Outside of the substance of the ad placed by 360Connect, it does not create, publish, review, or otherwise influence any of the content, images, or graphics on any of these websites. Simply put, 360Connect is not an editor of their content. Nor has it ever used any of Duro's marks, logos, or content in any of its own marketing activities.

Despite not having any responsibility for the actions of the websites in this situation, 360Connect has taken two major actions after receiving the claim from your client about alleged misappropriation of Duro's intellectual property: first, 360Connect informed the two independent website managers of Duro's claims, and secondly, also halted all of its advertising on these websites.

Despite not being responsible for the alleged infringements, 360Connect has also attempted to be a facilitator and negotiate in good faith among the four parties, even documenting the proposal your client made on April 19, 2024. We are puzzled as to why this is no longer a viable option. At this point we will step aside and let you and your client engage directly with the website managers.

Now that you are aware of the fact that 360Connect is merely an advertiser, has no ownership interest in the websites at issue, and does not control the content of those websites, it should be apparent to you and your client that there would be no factual or legal basis on which to file a claim against my client. Thus, proceeding with any such litigation would be a violation of ethical and procedural rules and would appear to be solely for the purpose of harassment.

If this letter does not provide you with enough information relating to this situation or if you have any questions about the facts and circumstances regarding my client's role as an advertiser in this situation, I would be happy to have a call to provide you with additional information so that unnecessary and costly litigation against an improper party can be avoided.

Very truly yours,

*Jean Warshaw*

Jean Warshaw

# EXHIBIT F

| | |
|---|---|
| **From:** | Ian Hart <ian.hart@outlook.com> |
| **Sent:** | 13 July 2024 08:10 |
| **To:** | Supreet Prasad |
| **Cc:** | Ana Juneja; Christeen Morquianos |
| **Subject:** | Re: DURO Trademark & Copyright Infringement (AL Docket No. 361.01001) |

Hi Surpeet,

There is a serious mistake here.  I have never owned or had any involvement with any of the websites, affiliate shops or social media accounts mentioned in your exhibits.   They have nothing to do with me at all.


**Here is ownership information for the domains from your pdf and exhibits:**

**Exhibit A**:  metalsteelbuilding.com = **Vaughn Bierbrauer**.   Never heard of or spoke with that person before.  Here is the Whois domain information confirming Vaughn is the owner:https://www.whois.com/whois/metalsteelhome.com

**Exhibit B**:  https://www.shopabunda.com/products/duro-span-steel-s20x20x14-metal-building-factory-kit-new-farm-storage-shed-barn  = I have zero to do with and have no idea what Shopabunda.com is.  I have zero accounts or pages there.

**Exhibit C**:  https://www.flickr.com/groups/durobuildings/  = I have zero Flickr.com accounts and have nothing to do with that Flickr group or whatever DB Buildings is.

**Exhibit D**:  https://wholesaleshop.ru/product/256285187812   -  I have zero Wholesaleshop.ru accounts, have never heard of that site and again I have notning to do with that page.

**Exhibit E**:  https://www.metal-building-homes.com/duro-steel-buildings-review/   - I have never owned metal-building-homes.com and have zero relationship with that domain.   Here is the Whois info for that domain that shows it is private but you can see it is registered in Israel  https://www.whois.com/whois/metal-building-homes.com


Again, I have no idea why you assume all of things accounts are me or related to me.   I do not appreciate being threatened with $100k over sites and properties not related to me.

I will speak with my attorney next week but want to get my name cleared and out of this.  I have no idea why you think I am behind any of those websites, affiliate shops and Flickr accounts from your Exhibits but you are 100% incorrect.


Would appreciate you all acknowledging this mistake and removing my name immediately from your PDF.

**From:** Supreet Prasad <supreet@analaw.com>
**Sent:** Friday, July 12, 2024 6:13 PM
**To:** ian.hart@outlook.com <ian.hart@outlook.com>
**Cc:** Ana Juneja <lawyer@analaw.com>; Christeen Morquianos <christeen@analaw.com>
**Subject:** DURO Trademark & Copyright Infringement (AL Docket No. 361.01001)

Dear Mr. Hart,

Please see the attached from Attorney Ana Juneja.

Best,

**Supreet Prasad**
**IP Specialist | Ana Law LLC**
**Office:** 202-266-7100 | **Fax:** 202-266-7101
supreet@analaw.com | analaw.com
1300 Pennsylvania Ave NW Suite 700 | Washington DC 20004
*****************************************************************

This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*****************************************************************

| | |
|---|---|
| **From:** | Ian Hart <ian.hart@outlook.com> |
| **Sent:** | 16 July 2024 22:07 |
| **To:** | Ana Juneja |
| **Cc:** | Supreet Prasad |
| **Subject:** | Re: metalbuildings.org & metalbuildingsrus.com |
| **Attachments:** | duro-ebay.jpg; duro-MB-ebay-page.jpg |

My attorney is out of the office until later this week.  They will be in touch with you once I meet with them to discuss.

**#1 - Hyphen vs Non-Hyphen Domains**.  The bottom line with this entire ordeal is that the 360 Connect team (call center, affiliate rep, attorney) all confused my site, **MetalBuildings.org**, with the hyphenated site from your exhibits, **Metal-Buildings.org.**   That is how I found myself involved in this.

As you made clear with your initial contact and PDF exhibits, it is easy to confuse the hyphens and assume the sites are the same.  They are not the same or related at all.  That is a crucial difference for the accusations you are making.   Why 360 Connect's attorney assumed all those exhibit domains were mine is not clear to me.  Jeff knows they are not mine and told her that during our phone discussion.

**#2 - How and Why** the Duro page was ever published on MetalBuildings.org.

That single page of DuroSpan content on metalbuildings.org/quonset-hut/durospan was a **PR piece for your client** that linked to the official Duro eBay storefront and their official website.  The page was published after a marketing person working for / or as a 3rd-party on behalf of Duro contacted me via email during Covid and asked to provide a backlink and to publish some positive content to suppress negative reviews online for the Duro brand.  That type of marketing outreach is very common and I get 10+ requests for that type of link every week.  Prior to that email contact, I had never heard of DuroSpan.

The marketing person found my site during Covid and asked me to create a backlink to them from my original Quonset Hut page (metalbuildings.org/quonset-hut/).  After being informed about the Duro eBay store and affiliate opportunity, it made more sense to make a dedicated page for DuroSpan under that /quonset-hut/ category and link to the eBay store.  In essence, that would make both myself and Duro money for referrals.

I would love to share those emails with you but they are no longer available.  Unfortunately, I had to change the web hosting in 2022 and I lost access to those old info@metalbuildings.org during that transition.  All is not lost though, as I have detailed analytics for the site and the eBay referrals.   The DuroSpan page on my site saw a grand total of **517 visits and 2 eBay referral sales**.  I have attached *proof of sales for Duro in their eBay store (see Duro-ebay.jpg attachment).*

**#3 - PR Content**- *Now let us look at the actual substance of my content vs the e-commerce stores and other sites in your exhibits.*

If you read the actual content of my page, it is overwhelmingly positive for the Duro brand.   It was clearly a PR promotional piece for them.

The first paragraph reads:   *"Duro Steel Buildings is a family-owned company that designs and manufactures affordable, quality steel building systems. Duro has been a leading steel provider for more than two decades, and the company is trusted by industry leaders, like Disney, SpaceX, John Deere, Carnival Cruise Lines and Harley-Davidson.*

*The company's line of DuroSpan kits make affordable steel buildings accessible and affordable."*

**As that introduction makes clear, MetalBuildings.org was not pretending to be DuroSpan.**   It certainly is not an "infringing link" as you assert.   In fact, all outbound links went to either the eBay store or Duro's official website.   Images were cited and credited as Duro's.   (*see Duro-MB-ebay-page.jpg attachment*).   It is the only site from your exhibits that correctly cite, link out and sends referrals to Duro.


FYI - The Wayback snapshot you attached is not an accurate version of the actual published page as you can see the page isn't fully loaded (javascript was cached and not loaded on WayBack) and everything is out of whack.   That screenshot you have sent does not show the eBay link images at all but as you can see in the Duro-MB-ebay-page.jpg attachment they are the main CTA's on the page.


Please compare my content with the e-comm stores using the Duro name, etc... It should be clear they are not the same in any way.   I understand why your client would be angry of the e-comm stores.  But I have proof of my eBay affiliate relationship with Duro with analytics and sales.   If I my goal was to impersonate the brand or deceive users, why would I send traffic to the eBay store?


**#4 - Bad Faith vs Good Faith and Fair Use** - Now let's compare what you say was done trying "hide evidence" and in "bad faith" versus what I consider to be done in good faith  to try to appease Duro during this ordeal.

As your initial PDF exhibits request, 'cease and desist' and 'remove' all Duro related content immediately.   I did that in good faith after my first conversation with 360 Connect.   Furthemore, I also created the 301 redirect to the Durospan.net page from my original page in good faith.  **That redirect benefits your client in terms of marketing and SEO.**  They also get the remaining traffic and page rank from that redirect.

If you would like for me to remove that redirect or truly believe it was created to  'hide evidence', then just let me know.   I can remove the redirect but please know that will only hurt your client's marketing efforts.


**#5 -  The overall timing of this situation.**

**This episode all started during the time that my father-in-law passed away.**   We were on the road to Kentucky for the funeral when my affiliate rep called and asked if I had any Duro content and that Bruce Duro had contacted them and was upset.   I didn't understand because my site sent traffic to the Duro eBay store.   I am not telling you this for sympathy but want you to try to understand how this impacted things on my end.

In that initial discussion, I told my 360 rep that I had a single page that promoted DuroSpan's eBay store on MetalBuildings.org.   At 360 Connect's request, I went ahead removed the single page of Duro content from my site in good faith to avoid any further conflict.  Naturally, I was focused on my family at that time and didn't think of anything beyond just removing the content from the website and redirecting it to your client.

A few days after that initial conversation (*but before I realized they had me confused with the hyphenated Metal-Buildings.org domain*) I spoke again with my affiliate rep again and this time she said the 360 attorney suggested it would be better for me to take my entire MetalBuildings.org site offline.  That was hard to do as the site was established in 1999 and had over 20 years of development.   It was painful to consider removing the site so I tried to hunt down my old emails from the marketing guy from Duro to clear things up.   When I realized that I could no longer access that old email server, I just gave up and took the entire site down (kept the 301 redirect in place for Duro) so that I could focus on being present with my family during the funeral.

After the weekend funeral, 360 Connect asked me to attend into a video conference call with the company owner, Jeff, my affiliate rep and their attorney all on the line.  I was forthright and explained the PR page and the eBay affiliate store.  At that point, their attorney said I should not mention the eBay arrangement as that 'upset' Bruce.  I didn't understand that approach at all until after you sent the pdf and I saw the ShopAbunda.com and WholesaleShop.ru exhibits.  I can only assume that the 360 attorney and your client both thought those e-commerce stores were the same as the 'Duro eBay store' I was promoting.  That was not the case, they were not the same, but somehow that got lost in translation.

Again, at this point I was operating on the principle that only my MetalBuildings.org site was involved.   I had no idea the 360 team knew about the hyphenated and e-comm sites.  That information was not shared with me up front.

After speaking with their attorney in greater detail, it became obvious that she had wrongly assumed that I owned the hyphenated domain(s) as well.  When I pointed out that I have nothing to do with the Metal-Buildings site or the Metal-Building-Homes.com site or any type of e-comm site, Jeff told her that those properties were not mine and that he knew who owned the hyphenated domains.  That was someone named 'Bill' and my understanding was that person did not live in the US.

At that point, I knew something was off with the overall information 360 Connect was sharing with me.  They should have told me from the start that multiple websites and properties were involved.

Weeks later, 360 Connect's attorney and Jeff contacted me again and asked me to pay thousands of dollars to them for a settlement with Duro.  I rejected that as I did nothing but promote Duro's eBay store on my site.

**#6** - Miscellaneous points

- **The phone number you mentioned was never mine.**  That was a tracking number from 360 connect and not something I ever had access to.  I do have access to the analytics from those calls and forms and there were a total of 102 'quonset' leads generated all-time on MetalBuildings.org.   I doubt 10% of those came from the Duro page but that is irrelevant. because from those 102 leads, only 4 converted into sales for a grand total commission of $47.

- **MetalBuildingsRus.com has zero to do with any of this.**  That site is new after MetalBuildings.org was taken down and has zero Duro brand content on it.

- I gave Jeff the OK to share my info with you so that I could clear this up.  When you sent the original PDF and not of it included my site, I figured the entire thing was a giant misunderstanding over who owned the Hyphenated domains.   That is why I responded with the WHOIS and ownership information for the sites in your exhibits.

With all that said,  please take some time to read and consider the above information.  It is my honest and sincere explanation for how I ended up involved in this.

My hope is that you can see from the eBay store sales and the PR narrative of my content that I was promoting DuroSpan and not trying to pretend to be the brand or infringe on their official marks.  MetalBuildings.org role in this is nothing at all like the e-comm sites your shared in your exhibits.  My site is the only one that was actively promoting Duro's official affiliate store.   To this day, my 301 redirect is still working to help the Duro brand.  I will leave that up as long as you and your client want it.

You will hear from my attorney later this week or early next week to clear this all up.

Thanks,
Ian

---

**From:** Ana Juneja <lawyer@analaw.com>
**Sent:** Monday, July 15, 2024 10:23 PM
**To:** ian.hart@outlook.com <ian.hart@outlook.com>
**Cc:** Supreet Prasad <supreet@analaw.com>
**Subject:** metalbuildings.org & metalbuildingsrus.com

**<u>FRE 408</u>**

Dear Mr. Hart,

To follow up my earlier email...

Please note, upon my further review, you were previously listed as owning "metalbuildings.org", which now redirects to "metalbuildingsrus.com" (which you also own and are still listed as the owner of).

It appears that you attempted to clean up the evidence once 360Connect, LLC informed you that you had been caught for infringement earlier this year. Please note, this was done seemingly fraudulently and almost certainly in bad faith (as your cover up actions were done in anticipation of litigation).

Prior to notifying 360Connect, LLC, your site, metalbuildings.org contained an infringing link (metalbuildings.org/quonset-hut/durospan) which now redirects to durospan.net.

A copy of your infringing website content from internet archives is available here (also attached): https://web.archive.org/web/20231211181624/https://www.metalbuildings.org/quonset-hut/durospan/

This infringing content led to the phone number +1-855-202-1240, which has now been cut off (and which Duro never had any access to, but was under your control).

Please provide an immediate explanation for why your name is listed as the owner of these infringing sites.

My client is preparing for litigation and if they proceed to include you in the suit, your LLC and you will be named personally as defendants.

My client is open to a private and amicable settlement on this matter, but we are actively preparing for litigation against several parties (potentially including you).

If you have retained counsel, please have them contact me immediately.

If we do not hear from you or your attorney by **July 22, 2024**, we will assume you have no interest in amicably resolving this out of court and we will proceed with our next steps.

**Ana Juneja**
**Attorney | Ana Law LLC**
**Office:** 202-266-7100 | **Fax:** 202-266-7101
**Direct:** 202-266-7102 | lawyer@analaw.com | analaw.com
1300 Pennsylvania Ave NW Suite 700 | Washington DC 20004
*********************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*********************************************************************

