UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:24-CV-81550-ROSENBERG

DURO BEAM, LLC

      Plaintiff,

v.

WILLIAM E. MANNING, WEM GLOBAL,
INC., JEFFREY HOOGENDAM, 360CONNECT,
LLC, IAN HART, IAN HART DESIGN, LLC and
CMI MARKETING, INC.

      Defendants.
_____/

**360CONNECT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant, 360Connect, LLC ("360Connect"), respectfully moves this Court, pursuant to Fed. R. of Civ. P. 12(b)(6), to dismiss the Second Amended Complaint, DE 35 (the "Complaint"). Shamelessly appending to the Complaint rank settlement communications protected by Fed. R. of Evid. 408, Plaintiff spuriously posits that they somehow prove 360Connect's complicity in the allegedly infringing conduct of the other named parties to this action. Yet just as with Plaintiff's prior pleading, there are no allegations of trademark use by 360Connect and Plaintiff's claims are implausible on their face. Dismissal this time should be with prejudice. 360Connect further states:[1]

**I.    BACKGROUND**

    **A.    General Allegations of Supposed Trademark Infringement**

This is a purported trademark infringement case. Plaintiff claims to supply steel building kits for residential and commercial purposes. DE 35 at ¶ 5. Plaintiff alleges ownership to various

---

[1] Nonparty Jeffrey Hoogendam, previously and conclusively dismissed from this case, files, concurrently, his own Motion to Dismiss, which sets forth arguments applicable directly to him.

1

trademarks and domains bearing some variation of "Duro." *Id.*, ¶¶ 18-19. The gravamen of the Complaint is that Plaintiff's "trademarks" appeared on two websites, metalbuildings.org and metal-buildings.org, in the form of a review of Plaintiff's products. *Id.*, ¶ 20.

Notably for purposes of this Motion, additional named party William E. Manning and his company, WEM Global, Inc. (the "Manning defendants"), are alleged "to have posted misleading content on www.metal-buildings.org, diverting leads from Duro Beam to competitors." *Id.*, ¶¶ 15(a), 25, 42 (the "Manning Website"). Similarly, Ian Hart and his company, Ian Hart Design, LLC (the "Hart defendants"), are alleged to "own and operate" the website metalbuildings.org, "which prominently featured Plaintiff's DURO marks without authorization" *Id.*, ¶ 43 (the "Hart Website"). The Manning and Hart defendants allegedly posted an article on the Manning and Hart Websites titled "Duro Steel Building Review," which "made multiple references" to Plaintiff's "Duro" marks. *Id.*, ¶ 21.

The Manning and Hart Websites "included a lead generation section where … readers could drop their contact details, believing the information would be shared with Plaintiff." *Id.*, ¶ 21. The leads generated from the article were allegedly "diverted" to Plaintiff's competitor, Steelmaster. *Id.*, ¶ 22.

Neither 360Connect nor its principal, Mr. Hoogendam, are accused of owning or operating the Manning or Hart Websites. Neither are alleged to have posted any content to or used Plaintiff's trademarks in connection with the implicated websites. Instead, Plaintiff describes 360Connect as offering services that match businesses with pre-screened suppliers across various industries, *i.e.*, connecting buyers with qualified vendors. *Id.*, ¶ 10.

Plaintiff purports to attach to the Complaint "website screenshots" depicting the Duro Beam reviews on the Manning and Hart Websites. *Id.*, ¶ 21. It did not. Exhibit 1 includes an

2

incomplete and altered reproduction from the Wayback Machine website from June 10, 2023, DE 35 at 23-26, and a digitally manipulated version of a supposed website bearing an article from May 2024. *Id*. at 27-34.[2]

Plaintiff's allegations against 360Connect are that "[u]pon investigation," Mr. Hoogendam, a principal of 360Connect, "personally conceived, directed, and implemented the strategy to use infringing websites to divert Duro Beam's leads to competitors." DE 35, ¶ 23. As the "operational head of 360Connect," Mr. Hoogendam allegedly "controlled which 'affiliates' would post misleading content, selected targets—including Duro Beam—and actively coordinated the misuse of Duro Beam's trademarks." *Id*. He "communicated directly with these affiliates, monitored their activities, and intentionally approved advertisements and lead generation funnels that falsely represented an association with Duro Beam." *Id*. There are no facts provided that supposedly informed Plaintiff's "investigation" and led it to these conclusions.

### B. **Plaintiff's Shameless Appending of Settlement Communications**

It is a bedrock principle of law that a person's attempt to settle a dispute are categorically inadmissible to prove liability. Plaintiff's attorneys have deliberately violated that fundamentally hallowed rule of law.

In particular, Plaintiff's attorneys attach to the Complaint and robustly quote from rank confidential settlement communications between the parties and their lawyers in April and May 2024 *after and in response* to Plaintiff's accusations of trademark infringement. According to Plaintiff, after it "threatened to take legal action," Jean Warshaw, an attorney representing

---

[2] The second printout, beginning at DE 35 at 27, does not bear the telltale signs of an actual website screenshot. Instead, an electronically devised banner purporting to reflect the domain and date appears across the top of the page.

360Connect, "acknowledged the business relationship between 360 Defendants and the infringing websites and agreed to settle the matter through mutually agreed-upon terms." DE 35, ¶ 24.

In the ensuing days, the parties "engaged in written settlement negotiations … regarding the unauthorized use of Plaintiff's intellectual property by two unnamed 'affiliates' operating" the Manning and Hart Websites and the potential involvement of 360 Defendants in such acts." *Id*., ¶ 25. Plaintiff then attaches to the Complaint a series of confidential settlement emails between Ms. Warshaw and Plaintiff's representative, Bruce Shore, and even a draft Confidential Settlement Agreement provided to Plaintiff. *Id*., Exhibits C and D.

Bluntly flaunting its violation of the Federal Rules of Evidence, Plaintiff alleges that 360Connect's "participat[ion] in settlement negotiations and offer[ing of] consideration on behalf of themselves and their affiliates" is an "acknowledge[ment of] their role in and benefiting from the infringing activities." *Id*., ¶ 44.

360Connect now moves, again, to dismiss the Complaint for failure to plausibly state a claim against it.

## II.     ARGUMENT

### 1.     **The Complaint is a Shotgun Pleading**.

Complaints that comingle claims into a single count or incorporate preceding paragraphs and counts into the others have been harshly criticized by the Eleventh Circuit as shotgun pleadings. *See Sikes v. Teleline, Inc*., 281 F.3d 1350, 1355 n.9 (11th Cir. 2002). "The unifying characteristic of all types of shotgun pleadings is that they fail to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Peraza v. Recovery Associates, LLC*, No. 19-20052, 2019 WL 13234107, at *2 (S.D. Fla. May 13, 2019) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015)); *see also*

*Waxman v. Equitable Life Assur.*, No. 07-80942, 2008 WL 619321, at *2 (S.D. Fla. Mar. 4, 2008) ("The Eleventh Circuit has frowned on such 'shotgun pleading' as it prevents defendants from understanding the nature of their alleged wrongdoing, thereby preventing them from forming reasonable responses to the allegations.").

Under *Weiland*, a complaint "containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" is an impermissible shotgun pleading. 792 F.3d at 1321.

Plaintiff asserts five claims: I – trademark infringement under 15 U.S.C. § 1125(a), II – false advertising under § 1125(a); III – unfair competition under Fla. Stat. § 501.201; IV – contributory trademark infringement; and V – tortious interference with business relationships. All the claims, however, run consecutively together without excluding those before them. In other words, each count "adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See id*. The Complaint is therefore a shotgun pleading and dismissal is appropriate under Rule 12(b)(6).

    2.    <u>**No Allegations of Trademark Use by 360Connect**</u>

Lanham Trademark Act and related unfair competition claims have at their core "use" of another's trademark. For example, liability under 15 U.S.C. § 1125(a) is against:

> Any person who, on or in connection with any goods or services, or any container for goods, <u>uses in commerce</u> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact….

*See also* § 1114 ("Any person who shall, without the consent of the registrant…<u>use in commerce</u> any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with

5

the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive" shall be liable for trademark infringement).

Further, "'[t]he mere assertion of trademark infringement, without any factual allegations of the nature of the infringement," is insufficient to provide fair notice. *See D.B.C. Corp. v. Nucita Venezolana, C.A.*, 464 F. Supp. 3d 1323, 1329 (S.D. Fla. 2020) (quoting *Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.*, 451 F.3d 295, 307 (2d Cir. 2006) (finding trademark claims "fail[ed] even the liberal standard of Rule 12(b)(6)" where they "consist[ed] of conclusory allegations unsupported by factual assertions" and thus "d[id] not give the defendants fair notice of the claims against them and d[id] not show, by facts alleged, that [plaintiff] [wa]s entitled to relief.").

Plaintiff repeatedly alleges that the unapproved use of its trademarks posted to the implicated websites was by the Manning and Hart defendants. For example, Plaintiff alleges in ¶ 15(a) that "Manning and WEM Global … posted misleading content on 'metal-buildings.org,' diverting leads from Duro Beam to competitors." Similarly, in ¶ 15(c), Plaintiff alleges that Ian Hart and Ian Hart Design "operat[ed] … websites, including 'metalbuildings.org,' which contained misleading advertising and unauthorized use of Duro Beam's trademarks." *See also* Complaint, ¶ 42 (alleging that Manning defendants "posted misleading content on metal-buildings.org"); ¶ 43 (alleging same against Hart defendants and metalbuildings.org website).

360Connect, on the other hand, is not alleged to have operated the implicated websites, posted any content, or used Plaintiff's trademarks. Instead, Plaintiff accuses 360Connect, generally, of "instruct[ing] the creation and placement of misleading advertisements," "approv[ing] the diversion of consumer leads away from" Plaintiff, and "controll[ing] the affiliate

6

relationships that perpetrated the infringing activities." Complaint, ¶ 41. These allegations do not support a direct trademark infringement claim against 360Connect.

To prevail on a claim of direct trademark infringement based on a federally registered mark, "the registrant must show that (1) its mark was ***used in commerce by the defendant*** without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Evans v. Wurkin Stiffs, Inc.*, No. 15-61934, 2016 WL 8793339, at *6 (S.D. Fla. Mar. 21, 2016) (emphasis added; citing *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc*., 496 F.3d 1231, 1241 (11th Cir. 2007); *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)). A plaintiff must prove the same elements for unfair competition under 15 U.S.C. § 1125(a) as is required for a direct trademark infringement claim. *Evans, supra* (citing *Suntree Techs., Inc. v. Ecosense Int'l, Inc*., 693 F.3d 1338, 1346 (11th Cir. 2012)).

In *Evans*, the plaintiffs sued Amazon, Macy's, and Nordstrom for trademark infringement claiming they listed a product by a third party on their respective websites and that searches for the plaintiffs' mark on those websites directed the user to product listings for allegedly infringing products. 2016 WL 8793339, at *6. The court held that these facts failed "to support a finding that Amazon, Macy's, or Nordstrom used or adopted Plaintiffs' marks such that they could be found directly liable for trademark infringement [and] unfair competition." *Id*.

Further, and as applicable here, the complaint stated that the defendants "make the conscious decision to label or otherwise advertise" the allegedly infringing product bearing the plaintiffs' trademark. *Id*. at *7. The court held, "[h]owever, without further factual support, this allegation 'stops short of the line between possibility and plausibility.'" *Id*. (citing *Twombly*, 550 U.S. 544, 546 (2007)).

As discussed above, Plaintiff accuses the Manning and Hart defendants of operating the implicated websites and posting a review concerning Plaintiff's "Duro Beam" products. 360Connect, however, while alleged to have engaged in activities such as "instructing," "approving," and "controlling," is not alleged to have used or adopted Plaintiff's trademarks. Plaintiff's failure to allege this basic requirement is fatal to its direct trademark infringement and unfair competition claims. Therefore, Counts I, II, and III should be dismissed.

3. **Failure to Identify Allegedly Infringed Trademarks**.

Even if Plaintiff had stated trademark and unfair competition claims, which it did not, fundamentally, in a trademark infringement case, a plaintiff must "identify which specific trademarks" the defendant violated. *Disney Ent., Inc. v. Tarano*, No. 6:12-cv-1763, 2013 WL 12156455, *2 (M.D. Fla. June 24, 2013) (dismissing complaint failing to identify which marks were infringed for "lacking the requisite level of plausibility upon which the Court can grant relief").

In *Valoro, LLC v. Valero Energy Corp.*, No. 14–21694, 2014 WL 3920035 (S.D. Fla. Aug. 11, 2014), a counter-defendant sued for trademark infringement moved for a more definite statement as to the alleged trademarks infringed. *Id*. at *4. The court stated, "[i]t has been long held that a party should identify the actual trademark and/or registration alleged to be infringed when making a claim of trademark infringement"). A "[c]omplaint lacks the requisite specificity [when] it does not identify every trademark which was allegedly infringed." *Id*. (citations omitted). "Merely listing a plurality of marks which a trademark holder has acquired prior rights through use in commerce is not enough to put a party on notice of trademark infringement, nor is it appropriate for a party to make the blanket statement that the accused infringers "have infringed its registered and unregistered marks."). *Id*. (citations omitted).

8

In ¶ 18 of the Complaint, Plaintiff lists seven trademarks. But its infringement allegations are directed, generally, to the plurality of "Plaintiff's trademarks." Without identifying which marks it claims were infringed, Plaintiff's blanket statement is insufficient to put 360Connect on notice of its claims. Counts I-IV should therefore be dismissed.

4. **All Claims Barred by Fair Use Doctrine**.

At the dismissal stage, courts are required to consider a complaint in its entirety, including any documents appended to it. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Here, because Plaintiff has appended the product review at issue and "the facts necessary to make the determination [of a fair use affirmative defense at the dismissal stage] are evident on the face of the complaint," *Land's End at Sunset Beach Cmty. Ass'n v. Land's End Acquisition Corp.*, 2016 WL 9526680, at *8 (M.D. Fla. Nov. 7, 2016), the matter is ripe for the Court's review.

The fair use defense applies where a defendant "used the plaintiff's mark to describe the plaintiff's product …." *Commodores Entm't Corp. v. McClary*, 314 F. Supp. 3d 1246, 1249 (M.D. Fla. 2018) (quoting *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1150 (9th Cir. 2002)). The entire point of the purported review on the Manning and Hart websites was to showcase Plaintiff's product. Without using the DURO-formative marks, that simply is impossible. *See Earth, Wind & Fire IP, LLC v. Substantial Music Grp. LLC*, 720 F. Supp. 3d 1261, 1273 (S.D. Fla. 2024) ("The Ninth Circuit in *New Kids* wrote that 'one might refer to 'the two-time world champions' or 'the professional basketball team from Chicago,' but it's far simpler (and more likely to be understood) to refer to the Chicago Bulls.").

In addition, the product review details a specific product and outlines its qualities and how a consumer could buy that product from Plaintiff. *Earth, Wind & Fire*, 720 F. Supp. 3d at 1274 ("if

9

the description of the defendant's product depends on the description of the plaintiff's product, more use of the plaintiff's trademark is 'reasonably necessary to identify the plaintiff's product' than in cases where the description of the defendant's product does not depend on the description of the plaintiff's product," quoting *Cairns*, 292 F.3d at 1154) (cleaned up). Here it is simply not possible to review Plaintiff's product without referencing it in detail. Moreover, the review is exceedingly complimentary and paints Plaintiff in a positive light.

And finally, the review expresses no sponsorship or affiliation with Plaintiff. *Cairns*, 292 F.3d at 1155–56. In *Cairns*, the Ninth Circuit found it persuasive that the products and advertisements were silent about whether they were "sponsored" or "endorsed" by the trademark owner, whereas other competitor products stated they were "authorized" by the trademark owner. I*d.; cf. Earth, Wind & Fire*, 720 F. Supp. 3d at 1276 (former band members included information in new project that "drew a close, unmistakable association with Earth, Wind & Fire to a degree unwarranted by the historical record"). Accordingly, because Plaintiff only complains about a positive product review that, on its face, only points readers to Plaintiff for purchase of the product, the Complaint should be dismissed for failure to allege trademark infringement or unfair competition.

5. **All Claims Predicated Entirely on Inadmissible Settlement Communications**.

As discussed above, Plaintiff attaches as Exhibits D and E to the Complaint **rank settlement communications**, and a draft Confidential Settlement Agreement, exchanged with 360Connect's attorney, Jean Warshaw, after and in response to Plaintiff's allegations of trademark infringement. The fact that those communications were made in "settlement" and intended to be "confidential" could not be clearer. *See, e.g.*, DE 35 at 40-48 (email subject line,

"Confidentiality"); DE 35 at 47 (referencing attached "settlement agreement"); DE 35 at 52 (containing "Confidentiality" provision in draft settlement agreement). Additionally, over ten lengthy paragraphs of Plaintiff's Complaint consist of robustly quoting from or purportedly paraphrasing from those confidential settlement communications. *See id*., ¶¶ 24-33.

Putting aside Plaintiff's rogue violation of Rule 408, or at least its fundamental policy underpinnings, what is apparent from the Complaint is that Plaintiff is using those settlement communications ***as its entire basis*** for asserting liability against 360Connect. In other words, Plaintiff's case against 360Connect boils down to this: because 360Connect attempted to facilitate a resolution to this dispute, 360Connect is the one that "orchestrated" or "coordinated" or "approved" or "supervised," etc. the allegedly tortious activities of the Manning and Hart defendants. *See, e.g*., DE 35, ¶ 23.

The fact that Plaintiff is basing its entire case against 360Connect on what was stated in inadmissible, confidential settlement communications is readily acknowledged. Specifically, Plaintiff alleges that 360Connect's "active participation in settlement negotiations and acknowledgment of the business relationship with the infringing websites *suggest they contributed* to the infringement of Plaintiff's trademarks." DE 35, ¶ 54. *See also* ¶ 28 (concluding, based on 360Connect's attempts to resolve this dispute, that it was "not merely a passive participant but the principal decision-maker"); ¶ 29 (stating that 360Connect's "involvement in the negotiation process" and "offering consideration on behalf of itself" and the Manning and Hart defendants "*thereby acknowledge[s]* its role in and benefiting from the infringing activities"); ¶ 30 (referencing Ms. Warshaw's settlement communications to "confirm that" 360Connect "had knowledge of the infringing content and played an active role in negotiating its resolution, *further supporting their inclusion* as a liable party") (emphasis added).

Contrary to Plaintiff's suppositions, Ms. Warshaw explained, "[d]espite not being responsible for the alleged infringements, 360Connect has also attempted to be a facilitator and negotiate in good faith among the four parties, even documenting the proposal your client made on April 19, 2024." DE 35 at 63. But even putting that aside, none of the confidential settlement communications attached to and quoted in the Complaint are admissible. Because Plaintiff has not alleged any facts independent of those inadmissible settlement communications purportedly supporting its case, Plaintiff's claims against 360Connect are legally insufficient, implausible under *Twombly*, and should be dismissed with prejudice.

6. **No Tortious Interference Claim Without Identifiable Customers.**

In order to maintain a claim for tortious interference with a business relationship, a plaintiff must allege a) the existence of a business relationship; b) knowledge of the relationship on the part of the defendant; c) an intentional and unjustified interference with the relationship; and d) damage to the plaintiff as a result of the tortious interference with the relationship. *See Realauction.com, LLC v. Grant St. Group, Inc.*, 82 So. 3d 1056, 1058 (Fla. Dist. Ct. App. 2011).

A claim for tortious interference must "identify the customers who were the subject of the alleged interference." *Bortell v. White Mountains Ins. Group, Ltd.*, 2 So. 3d 1041, 1048 (Fla. Dist. Ct. App. 2009). A cause of action will not lie on the ground that the defendant interfered with a relationship between the plaintiff and the public at large. *Id*. (dismissing tortious interference claim based on the allegation defendant interfered with plaintiff's "book of business").

Plaintiff alleges that 360Connect "intentionally interfered with Duro Beam's business relationships by engineering a scheme to divert leads through false advertising and misuse of trademarks." But Plaintiff never alleges the existence of any such business relationships or 360Connect's knowledge of same. Moreover, Plaintiff fails to identify any customers or businesses

12

"who were the subject of the alleged interference." *See id*. Plaintiff cannot maintain an action for tortious interference by alleging that 360Connect "interfered with a relationship between the plaintiff and the public at large." *See id*. Count V should therefore be dismissed.

### III. CONCLUSION

For all of the foregoing reasons, the Complaint fails to state a claim under Rule 12(b)(6) and should be dismissed.

WHEREFORE, Defendant, 360Connect, LLC, respectfully requests that the Court dismiss the Second Amended Complaint with prejudice, award it its attorneys' fees and costs under the Lanham Act, 15 U.S.C. § 1117, and for such other and further relief as the Court deems appropriate.

Dated: May 27, 2025              Respectfully submitted,

By: */s/ Matthew S. Nelles*
Matthew S. Nelles
Florida Bar No.: 009245
Joshua Cooper
Florida Bar No.: 117658
matt.nelles@johnsonmartinlaw.com
Johnson & Martin, P.A.
500 West Cypress Creek Rd., Suite 430
Ft. Lauderdale, FL 33309
T: (954) 790-6698
Eservice: kerty.apelt@johnsonmartinlaw.com

*Attorneys for Defendants 360Connect, LLC and Nonparty Jeffrey Hoogendam*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record are being served on May 27, 2025 with a copy of this document via the Court's ECF system.

*/s/ Matthew S. Nelles*
Matthew S. Nelles

## SERVICE LIST

Ama N. Appiah, Esq.
Email: ama.appiah.2003@gmail.com
Law Office of Ama N. Appiah, P.A
721 1st Ave N Ste 202,
St Petersburg, FL 33701-3603
(727) 471-3538

Ana Juneja, Esq.
Ana Law LLC
1300 Pennsylvania Ave NW Suite 700
Washington, DC 20004
(202) 266-7100
docket@analaw.com

*Attorneys for Plaintiff*


James M. Slater
Slater Legal PLLC
9000 Dadeland Boulevard #1500
Miami, Florida 33156
Tel.: (305) 523-9023
james@slater.legal

*Attorney for Hart Defendants*


Kelly Ann M. desRosiers
Kelly@Lomnitzerlaw.com
Lorri Lomnitzer
Lorri@Lomnitzerlaw.com

Allison A. Mingo
Allison@Lomnitzerlaw.com
THE LOMNITZER LAW FIRM, P.A.
7999 N. Federal Highway, Suite 200
Boca Raton, FL 33487
Telephone: (561) 953-9300
Direct: (561) 953-9301

*Attorneys for Manning Defendants*