UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DURO BEAM, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WILLIAM E. MANNING, *et al.*,<br><br>    Defendants. | Case No. 9:24-cv-81550-RLR |

**HART DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Ian Hart and Ian Hart Design, LLC (collectively, the "Hart Defendants") file this brief reply in support of their motion to dismiss [ECF No. 38] the operative Second Amended Complaint ("SAC").

In response to Hart Defendants' motion, Plaintiff relies on presuit correspondence subject to Federal Rule of Evidence 408 that it impermissibly attached to the SAC to suggest that Hart Defendants' product review constitutes violations of the Lanham Act and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). But that nothing in those emails—which explain that Mr. Hart was contacted by an affiliate or agent of Plaintiff to ask him to build the product review so that Plaintiff could garner more sales, of which he would receive a small portion as part of eBay's affiliate program—negate the arguments in Hart Defendants' motion to dismiss. Indeed, they demonstrate that any use of Plaintiff's trademarks for the product review was consensual. *Gelsomino v. Horizon Unlimited, Inc*., 2008 WL 4194842 (S.D. Fla. Sep.10, 2008). Moreover, nothing in the response explains how anyone was confused by the product review or whether Hart Defendants maintained any affiliation with Plaintiff.

As explained by Mr. Hart in his correspondence with Plaintiff's counsel, the positive product review only directed consumers to Plaintiff, and several of those individuals purchased products *from Plaintiff*. Simply because Hart Defendants made $47 [ECF No. 50 at 12] in eBay affiliate revenue from the product review where Plaintiff made significant sales (which it knew), does not affect the fair use analysis for trademark, as opposed to copyright, use. To be sure, "the degree of consumer confusion [is] a factor in evaluating fair use" in the trademark context. *Commodores Ent. Corp. v. Thomas McClary*, 2015 WL 12843872, at *2 (M.D. Fla. Mar. 10, 2015); *Cf. Frazetta v. Vanguard Prods., LLC*, 716 F. Supp. 3d 1265, 1282 (M.D. Fla. 2024) ("Commercial uses [in the copyright context] are also less likely to be fair.") (citing *Andy Warhol Found. v. Goldsmith*, 598 U.S. 508, 531, 143 S.Ct. 1258, 215 L.Ed.2d 473 (2023)).

Just because there is commercial gain does not mean that the statements were false, created a false impression, or any deception. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). And Plaintiff does not argue that in its response. Nor could it. The product review on its face was positive. Thus, Plaintiff's assertions of "unauthorized use" that "misled consumers," and "caus[ed] significant harm to Plaintiff's reputation and business interests" can be dismissed as there is nothing in the response that supports those conclusory allegations.

In fact, if Plaintiff intends to rely on Mr. Hart's presuit correspondence to suggest a commercial interest (which does not affect a *trademark* fair use claim or explain any commercial deception), the entirety of those "admissions" should be weighed against the SAC, such as Mr. Hart's assertions that Plaintiff, or its agent, authorized the product review. Plaintiff should not be able to use some of Mr. Hart's statements and ignore the rest—particularly where the only real factual assertions tied to the SAC are in those emails; otherwise, the SAC consists entirely of conclusory statements without support. Because Plaintiff chose to include those statements with

the complaint, if the Court chooses to consider them as "central" to the SAC, it should consider all the statements, including that the product review was authorized by Plaintiff, or its agent, to direct consumers to Plaintiff's eBay page for sales in exchange for Hart Defendants' receipt of an eBay affiliate referral payment, in this case totaling $47.

While it is unclear why Plaintiff sued Hart Defendants for doing exactly what it asked, the fact that Hart Defendants removed the website when contacted by Plaintiff's counsel also does not create a cause of action under the Lanham Act or FDUTPA, as Plaintiff suggests in its response. [ECF No. 50 at 3 – 4 ("[e]fforts to preserve diverted traffic even after removal" and "[t]he post-removal redirect preserved search ranking value"). As Mr. Hart explained in his correspondence with Plaintiff's counsel, he created a "301 redirect" of the product review for the benefit of Plaintiff. [*Id.* at 11]. A "301 redirect" is a permanent redirection of one URL to another. *See* HTTP 301, Wikipedia, https://en.wikipedia.org/wiki/HTTP_301. According to Wikipedia, when a webpage is redirected, like this one, "Search engines typically transfer a majority of the link equity (or 'link juice') from the source URL to the target URL for 301 redirects." *Id.* While Plaintiff provides nothing more than speculation as to its conclusion that redirecting the website benefited Hart Defendants and thus should be ignored, even so, were the Court to consider this bare conclusion, it appears that it is without any support in fact.

Finally, while Plaintiff lodges various accusations at Hart Defendants in the SAC, it does not accuse them of using the mark outside the context of the product review, such as in metadata, as Plaintiff suggests in its response. [ECF No. 50 at 2]. The Court should disregard this assertion.

In sum, the Court should dismiss the Hart Defendants from this action.

Dated: June 4, 2025.

Respectfully submitted,

**James M. Slater**
James M. Slater (FBN 111779)
Slater Legal PLLC
9000 Dadeland Boulevard #1500
Miami, Florida 33156
Tel.: (305) 523-9023
james@slater.legal

*Attorneys for Hart Defendants*