UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 24-CV-81550-WPD/BER

DURO BEAM, LLC.,

           Plaintiff,

vs.

WILLIAM E. MANNING,
WEM GLOBAL, INC.,
360CONNECT, LLC,
IAN HART, and
IAN HART DESIGN, LLC,

           Defendants.

_____/

## OMNIBUS REPORT AND RECOMMENDATION ON MOTIONS TO DISMISS [ECF Nos. 38, 40, 48]

Duro Beam, LLC filed a five-count Second Amended Complaint (SAC) against William Manning, WEM Global, Inc., 360Connect LLC, Jeffrey Hoogendam, Ian Hart, and Ian Hart Design, LLC. ECF No. 35. Viewed in the light most favorable to Duro Beam, the SAC alleges that (1) the defendants hosted websites that contained positive reviews of Duro Beam's products, and included Duro Beam's trademarks, (2) the websites contained "lead generating" sections which allowed the website visitor to get more information about the products, (3) customers who used the lead generating function to try to get information about Duro Beam's products were instead sent to Duro Beam's competitors. The SAC frames this conduct as direct and contributory trademark infringement, false advertising, unfair competition, and

tortious interference with business relations. For the following reasons, Counts I, IV, and V of the SAC should be dismissed with prejudice. Counts II and III should be dismissed without prejudice.

I. PROCEDURAL HISTORY

Duro Beam filed an initial four-count complaint that alleged trademark infringement and unfair competition. ECF No. 1. Before that complaint was served, Duro Beam filed a First Amended Complaint that alleged the same causes of action. ECF No. 7. On the defendants' motions, Judge Rosenberg dismissed the First Amended Complaint as a shotgun pleading. ECF No. 34. The relevant part of the Order said, "Much of the Complaint is a recitation of the litigation surrounding the Plaintiff's pre-suit demand letters. Combined with the fact that the Complaint combines the Defendants' conduct together, the Court [finds] that the Complaint is a shotgun pleading that does not give any Defendant fair notice of a claim." *Id*.

Duro Beam then filed the operative SAC. I have separately recommended that the claims against Mr. Hoogendam be dismissed. ECF No. 65. All remaining defendants have moved to dismiss. ECF Nos. 38 (Hart, Hart Design), 40, 43 (Manning, WEM Global), 48 (360 Connect). Duro Beam has responded on the merits to each motion. ECF Nos. 50, 51, 55. It did not request leave to amend. Defendants filed replies. ECF Nos. 52, 53, 58.

The remaining claims and defendants are:

| Count | Cause of Action | Defendant(s) |
|---|---|---|
| I | Direct Trademark Infringement | Hart, Hart Design, |

| II | Lanham Act False Advertising | Manning, WEM Global, 360Connect |
|---|---|---|
| III | Florida Unfair Competition | |
| IV | Contributory Trademark Infringement | 360Connect |
| V | Tortious Interference with Business Relations | |

## II.  LEGAL PRINCIPLES

*A. Pleading Standards*

A pleading seeking relief in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this pleading requirement, a complaint must provide the defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). And, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count." Fed. R. Civ. P. 10(b).

While a claim "does not need detailed factual allegations," it must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation"). Nor can a claim rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U. S. at 678 (quoting *Twombly*, 550 U. S. at 557 (alteration in original)). Factual allegations must be enough to raise a right to relief above the

3

speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Twombly*, 550 U. S. at 555 (citations omitted).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U. S. at 570). In addition, "courts may infer from factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct that plaintiff would ask the court to infer." *Am. Dental Assoc. v. Cigna Corp.*, 605 F. 3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal,* 556 U. S. at 682). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal,* 556 U. S. at 678 (quoting *Twombly,* 550 U. S. at 557).

When evaluating a motion to dismiss under Rule 12(b)(6):

> [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal,* 556 U. S. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. If the factual allegations in a complaint are inconsistent with its exhibits, the exhibits control. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019).

One way to violate Rule 8 and Rule 10 is to file a so-called shogun pleading, which is a complaint that "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office,* 792 F.3d 1313, 1323 (11th Cir. 2015). The Eleventh Circuit has repeatedly instructed lower courts to dismiss shotgun pleadings. *See Jackson v. Bank of America,* 898 F.3d 1348, 1357 (11th Cir. 2018); *see also, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1133 (11th Cir. 2001) (Court must *sua sponte* strike shotgun pleading). "[T]he Court cannot be forced to speculate on what someone is complaining about." *Shillingford v. Rolly Marine Serv., Inc.,* No. 14-CIV-61936, 2014 WL 6682477, at *2 (S.D. Fla. Nov. 25, 2014) (citation omitted). The court cannot simply "fill in the blanks" to state a claim, and "it is not the Court's duty to search through a plaintiff's filings to find or construct a pleading that satisfies Rule 8." *Id.* (citations omitted); *Richardson v. Route 1, Inc.,* No. 8:12-CV-2888-T-33TBM, 2013 WL 4055857, at *4 (M.D. Fla. Aug. 12, 2013) ("This Court is not duty-bound to scrutinize [plaintiff's] factual allegations and hypothesize as to what potential cause of action these facts might support.").

"When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid

future shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018)

### B. Federal Causes of Action

As relevant here, federal law recognizes the following causes of action: (1) direct trademark infringement, (2) contributory trademark infringement, (3) direct false advertising, and (4) contributory false advertising. 15 U.S.C. §1125(a) (direct infringement and direct false advertising); *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) (contributory infringement theory); *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1274-79 (11th Cir. 2015) (contributory false advertising).

The elements of direct copyright infringement are: (1) that plaintiff "had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1346 (11th Cir. 2012). The alleged infringer also must have used the mark "in commerce." *See Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 423, 143 S. Ct. 2522, 2531, 216 L. Ed. 2d 1013 (2023) (Section 1125(a) prohibits "the unauthorized use 'in commerce' of a protected trademark when, among other things, that use 'is likely to cause confusion.'"). "[L]ikelihood of confusion occurs when a later user uses a trade-name in a manner which is likely to cause confusion among ordinarily prudent purchasers or prospective purchasers as to the source of the product." *Cap. Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387, 393 (5th Cir. 1980) *cited in Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 126–27 (11th Cir. 2022).

6

"The central inquiry in the claims under §1125 is 'whether the defendant is passing off his goods or services as those of the plaintiff by virtue of substantial similarity between the two, leading to confusion on the part of potential customers.'" *Monsanto Co. v. Campuzano,* 206 F. Supp. 2d 1252, 1265 (S.D. Fla.), *modified in other part,* 206 F. Supp. 2d 1270 (S.D. Fla. 2002) (citation omitted).

The elements of contributory trademark infringement are: "(1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a) 'intentionally induces' the direct infringer to commit infringement, (b) supplies a 'product' to the direct infringer whom it 'knows' is directly infringing (actual knowledge), or (c) supplies a 'product' to the direct infringer whom it 'has reason to know' is directly infringing (constructive knowledge)." *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019). "[A]ny liability for contributory infringement will necessarily depend upon whether or not the contributing party intended to participate in the infringement or actually knew about the infringing activities." *Mini Maid Servs.,* 967 F.2d at 1522.

The elements of direct false advertising are: "(1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising." *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1260 (11th Cir. 2004); *see also Duty Free Americas,* 797 F.3d at 1277 (direct false advertising plaintiff "must

7

plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the ... misrepresentations.") (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118, 139 (2014)).

The elements of contributory false advertising are: (1) "a third party in fact directly engaged in false advertising that injured the plaintiff; [(2)] the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Duty Free Americas,* 797 F.3d at 1277.

*C. State Causes of Action*

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) prohibits unfair competition. The elements are "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). A practice is unfair under the FDUTPA if it "offends established public policy" or is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). A deceptive act occurs when a defendant makes "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (citing *Beacon Prop. Mgmt.*, 842 So. 2d at 777) (emphasis omitted).

Although the statutory language is different, the same legal standards apply to FDUTPA unfair competition and federal false advertising claims. *See, e.g., Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v.*

8

*Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, the Ecumenical Ord.*, 702 F.3d 1279, 1296 (11th Cir. 2012) ("The success of Plaintiff Order's state unfair competition and FDUTPA claims is tied to the federal Lanham Act claims for infringement and false advertising.") *citing Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008) (plaintiff's "claim for a violation of the Florida Deceptive and Unfair Trade Practices Act rises or falls on the success of its trademark infringement and false advertising claims.").

Florida law also prohibits tortious interference with business relations. The elements of that cause of action are: "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the interference." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 385 (Fla. Dist. Ct. App. 1999). The business relationship must be with "present or prospective customers[;] no cause of action exists for tortious interference with a business's relationship to the community at large. As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994).

### III.   MOVANTS' ARGUMENTS

*A. Settlement Communications*

Multiple defendants argue that the SAC improperly references pre-suit settlement discussions. They cite Federal Rule of Evidence 408(a), which says:

> Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> **(1)** furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
>
> **(2)** conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a). Dura Beam responds that it is not using the settlement discussions for a prohibited purpose. It says, ""The emails are cited to demonstrate 360Connect's knowledge of affiliate conduct, its role in managing the infringing funnel, and its own recognition of the problem." ECF No. 55 at 5. All these facts – knowledge of the conduct of codefendants, involvement with alleged infringing website, and knowledge of the activities alleged in the SAC – are relevant to proving Dura Beam's claims. So, the settlement discussions cited in the SAC appear to fall squarely into Rule 408 and likely would be inadmissible at trial.

Some courts presented with this situation have stricken the settlement communications under Fed. R. Civ. P. 12(f). *See, e.g., Askan v. Faro Technologies, Inc.,* No. 6:23-cv-920-PGB-DCI, 2023 WL 7411243 at *4-5 (M.D. Fla. Oct. 6, 2023) (collecting cases). I do not believe that remedy is proper in this case.

10

This case is at the pleading stage. Federal Rule of Civil Procedure 8 requires only that the complaint allege sufficient competent facts to state a plausible claim for relief. Facts are competent if they are entitled to the assumption of truth. The Court cannot consider how (or if) those facts ultimately can be proven at trial. It must view the competent facts in the light most favorable to the Plaintiff and cannot weigh credibility. The text of Rule 8 does not empower the Court to consider admissibility. In short, Rule 8 is about pleading, not proving.

Contrast that situation with the summary judgment stage. Then, the question is not whether a plausible claim has been alleged; it is whether a reasonable jury could find in a party's favor. And, juries can only consider admissible evidence. So, the Rules of Civil Procedure specifically empower the Court to consider admissibility. Rule 56(c)(2) says, "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." This textual difference between Rules 8 and 56 suggests that inadmissible evidence can be considered in deciding if a complaint states a claim upon which relief can be granted.

I also note that Rule 408 does not apply to underlying facts that may have been discussed during settlement negotiations. It is possible that, after discovery, a plaintiff may be able to prove a particular fact without referring to settlement discussions. Here, for example, Dura Beam later may be able to prove ownership of the websites and the contractual relationships among the Defendants without using

11

the settlement emails. For this independent reason, I conclude that Rule 408 does not prevent Dura Beam from including settlement communications in the SAC.[1]

B. *360Connect (ECF No. 48)*

360Connect is named in all Counts. It says (1) the SAC is a shotgun pleading, (2) the SAC fails to plausibly allege direct infringement because it does not allege a proper "use" of Duro Beam's marks, (3) the SAC does not adequately identify the trademarks at issue, (4) Duro Beam's trademark claims are barred by the fair use doctrine, (5) the SAC does not plausibly allege tortious interference with business relations because it does not specify an identifiable customer.

C. *Manning Defendants ECF No. 40*

The Manning Defendants are named in Counts I, II, III. They argue (1) the SAC was not properly served on them, (2) the SAC is too conclusory to state a plausible claim for relief, (3) the SAC does not allege that the Manning Defendants are Dura Beam's competitor, that they infringed Dura Beam's marks, or that there is a likelihood of consumer confusion, and (4) the fair use doctrine applies.

D. *Hart Defendants (ECF No. 38)*

The Hart Defendants are named in Count I, II, and III. They say (1) the nominative fair use doctrine applies, and (2) the SAC does not plausibly allege customer confusion or deception.

---

[1] I also am concerned about the "slippery slope" that could follow from striking allegations in a complaint because the evidence will ultimately be inadmissible at trial. Could a future defendant move to strike complaint allegations as hearsay? Unduly prejudicial? Lack of authentication?

## IV.   INDIVIDUAL COUNTS

*A. Count I*

Count I should be dismissed against all Defendants because, even viewed in the light most favorable to Duro Beam, the SAC does not plausibly allege direct copyright infringement.

1. <u>360Connect</u>

The SAC alleges only that 360Connect "facilitated" misleading advertising practices and unauthorized use of Duro Beam's marks. ¶¶15(b), 44. It does not allege a "use in commerce" of Dura Beam's marks by 360Connect.

Duro Beam's Response to the Motion to Dismiss says 360Connect "[d]esigned, approved, and coordinated lead funnels that deployed DURO-formative marks; [d]irected affiliates to post misleading content suggesting affiliation with Plaintiff; [m]onetized diverted leads through those channels; [a]ttempted to resolve liability with payments and admissions." ECF No. 55 at 3. There are no citations to the SAC. 360Connect disputes that the SAC contains these allegations. *See* ECF No. 58 at 2. Even if they were in the SAC, none of them allege the kind of "use in commerce" required for direct infringement.

2. <u>Manning Defendants and Hart Defendants</u>

Count I should be dismissed as to both the Manning Defendants and the Hart Defendants because the well-pled allegations of the SAC do not plausibly allege the kind of consumer confusion that falls within Section 1125. That statute requires proof that there was confusion "as to the affiliation, connection, or association of [the

13

infringer] with another person, or as to the origin, sponsorship, or approval of [the infringer's] foods, services, or commercial activities." 15 U.S.C. §1125(a). "The ultimate question [is] whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way" based on the similarity of the parties' marks. *Homes & Land Affiliates, LLC v. Homes & Loans Mag., LLC*, 598 F. Supp. 2d 1248, 1268 (M.D. Fla. 2009) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 650 (11th Cir. 2007)). *See also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011) ("because the *sine qua non* of trademark infringement is consumer confusion . . . the owner of the mark must demonstrate likely confusion, not mere diversion" to another company).

The only allegations of customer confusion are factually-unsupported and conclusory. *See* ¶¶42, 43. At best, the SAC alleges that potential customers filled out lead generation forms expecting to be contacted by Duro Beam but were contacted by someone else. The SAC does not allege that the customers were confused that the person who responded to their lead was from Duro Beam or thought that any products being offered to them came from Duro Beam.[2]

---

[2] Because Count I fails to allege a prima facie claim for direct infringement, I do not reach the question whether Counts I and IV also should be dismissed under the fair use doctrine.

*B. Counts II and III*

Counts II and III should be dismissed against all Defendants as shotgun pleadings. They commit "the sin of not separating into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1322–23. Count II appears to allege direct false advertising by Mr. Manning, WEM, Mr. Hart, and Hart Design. ¶¶ 47 (Manning defendants "are alleged to have engaged in false advertising by *using* Plaintiff's intellectual property") (emphasis added), 48 (Hart defendants "are alleged to have *used* misleading advertisements) (emphasis added). It simultaneously appears to allege contributory false advertising by 360Connect. ¶49 (defendant "involved in" and "facilitating" misleading advertisements).

Count III purports to allege unfair competition under "both federal and state law." It is unclear that federal law recognizes a cause of action for unfair competition separate from a claim for false designation of origin. *Compare Ghostbed, Inc. v. Casper Sleep, Inc.* No. 15-CV-62571, 2016 WL 4145909 at *2-3 (S.D. Fla. July 19, 2016) *with Inskeep v. Baccus Glob., LLC,* No. 20-CV-82127, 2024 WL 416357, at *16 (S.D. Fla. Feb. 5, 2024). In any event, Count III does not provide adequate notice of the precise cause of action being alleged.

The structure of the SAC also makes it a shotgun pleading. Counts II and III do not incorporate by reference the allegations in Paragraphs 1-38, which makes them "guilty of the venial sin of being replete with conclusory, vague, or immaterial facts not obviously connected to any particular cause of action." *Weiland,* 792 F.3d at 1322. In the alternative, they could be read to incorporate all prior paragraphs, including Count I, which makes them guilty of the "mortal sin" of re-alleging "all

15

preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* at 1321.

### C. Count IV

Count IV should be dismissed because the SAC fails to plausibly allege direct infringement. There can be no contributory infringement without a direct infringer.

### D. Count V

Count V should be dismissed because it fails to plausibly allege an identifiable present or prospective customer. ¶¶ 57-59. Duro Beam concedes that the SAC does not identify a specific customer; it incorrectly argues, "It is enough to allege a business expectancy and unjustified interference." ECF No. 55 at 5.

## V. SERVICE OF PROCESS ON THE MANNING DEFENDANTS

The Manning Defendants say the SAC should be dismissed under Fed. R. Civ. P. 12(b)(5) because they were not properly served. I disagree.

The First Amended Complaint was filed on December 16, 2024. ECF No. 7. Summonses to all defendants were issued that same day. ECF No. 8. The process server's proof of service says that Mr. Manning was personally served on April 9, 2025. ECF No. 42. A different proof of service says that WEM Global was served on the same day by serving Mr. Manning "who is designated by law to accept service of process on behalf of WEM Global." ECF No. 41. On May 19, the Manning Defendants filed a motion to dismiss for improper service under Rule 12(b)(5) and to dismiss for failure to state a claim under Rule 12(b)(6).

Although the summonses were not served within the 90 days required by Fed. R. Civ. P. 4, the Court exercised its discretion under Rule 4(m) to deem the service

timely. ECF No. 47. In that same Order, the Court said it would "address the question of whether service was effective as posed in Defendants' motion to dismiss when the motion ripens." *Id*.

The Manning Defendants say service was improper. In a sworn affidavit, Mr. Manning says the process server did not identify himself, did not confirm that Mr. Manning was the registered agent for WEM Global, and only served the original complaint, not the First Amended Complaint. ECF Nos. 40 at 6-7; 40-1. The motion does not cite any legal authority for why these alleged failings invalidate service of process. Duro Beam responds that the process server's affidavit is sufficient to prove proper service. ECF No. 51 at 2 (citing Fed. R. Civ. P. 4(l)). In reply, the Manning Defendants concede it is their burden to show "by strong and convincing evidence" that service of process was improper. ECF No. 53 at 2-3.

The record before the Court is a battle of sworn affidavits. The process server's affidavit says service was proper. Mr. Manning's affidavit says it was not. To the extent the Court can make credibility findings, I note that Mr. Manning has a personal interest in the outcome of the case and the process server does not. 11th Cir. Pattern Jury Instruction (Civil) 3.4. Regardless, Mr. Manning's affidavit is not "strong and convincing evidence" sufficient to meet his burden.

## VI. REMEDY

The Court must assess whether the dismissals should be with or without prejudice. Federal Rule of Civil Procedure 15 states that the "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In general, a

17

plaintiff must be given at least one opportunity to amend a complaint. *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). "After a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.*, No. 20-MD-2924-RLR, 2021 WL 2865869, at *23 (S.D. Fla. July 8, 2021) (citing *Andrx Pharms., Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1236 (11th Cir. 2005)). Denial of leave to amend is justified by futility when the complaint as amended would still be subject to dismissal. *See, e. g.*, *Christman v. Walsh*, 416 Fed. App'x 841, 844 (11th Cir. 2011) ("A district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning the amended complaint would not survive a motion to dismiss."). Additionally, where, as here, the scheduling order deadline to amend pleadings has passed, the plaintiff must show good cause for amending. Fed. R. Civ. P. 16(b). If a claim is not dismissed with prejudice, the proper procedure is for the plaintiff to file a separate motion for leave to file an amended complaint, with the proposed amended pleading attached.

      Granting leave to amend Counts I, IV, and V would be futile, so they should be dismissed with prejudice. For the reasons discussed above, Duro Beam will not be able to show likelihood of confusion as required for direct trademark infringement. Its theory of the case is that, because the websites displayed Duro Beam's marks, customers thought the lead generation function would connect them to Duro Beam.

There is no suggestion that the third parties who responded to the lead requests used marks that looked like Duro Beam's or pretended to be Duro Beam. And, without direct infringement, there cannot be contributory infringement.

It also would be futile to allow Duro Beam to replead its tortious interference claim. Duro Beam's theory is that it was prevented from forming business relationships, not that its existing business relationships were affected.

Whether to dismiss Counts II and III with prejudice is a closer question. The Court's prior shotgun pleading order did not fully "explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings." *See Vibe Micro*, 878 F.3d at 1296. I am skeptical that Duro Beam can plausibly allege that the allegedly-false advertisements had a material effect on purchasing decisions. But, I cannot rule out that it could plead additional facts to support this element. For these reasons, I recommend dismissing Counts II and III without prejudice. If Duro Beam wants to replead those claims, it should file the appropriate motion, append the proposed pleading, and explain why there is good cause to allow further amendment. *See* S.D. Fla. Local Rule 15.1. Defendants can respond and the Court will have developed briefing on the issues.

Accordingly, it is **RECOMMENDED** that the District Court GRANT the Motions to Dismiss. ECF Nos. 38, 40, 48.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable William P. Dimitrouleas, United States District

Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 20th day of August 2025.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE